T.C. Memo. 1999-10

UNITED STATES TAX COURT

F. BROWNE GREGG, SR., AND JUANITA O. GREGG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13188-96.                    Filed January 22, 1999.

<u>Bernard A. Barton, Jr.</u>, for petitioners.

<u>Charles Baer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined a deficiency in petitioners' Federal income tax for tax year 1990 in the amount of $5,582,555.

After stipulations and concessions,[1] the remaining issues for consideration are: (1) Whether a jury award paid to petitioner husband pursuant to a judgment against U.S. Industries, Inc. (USI), on a claim for fraudulent inducement to enter into a contract is excludable under section 104(a)(2) as damages received on account of personal injury. We hold that it is not. (2) Whether a jury award paid to petitioner husband pursuant to a judgment against USI on a claim for interference with a business relationship is excludable under section 104(a)(2) as damages received on account of personal injury. We hold that it is not. (3) Whether prejudgment interest paid to petitioner husband pursuant to a judgment against USI is excludable under section 104(a)(2). We hold that it is not.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1] The parties stipulate that $2,500,000 in punitive damages awards received by petitioner husband is properly includable in petitioners' gross income. The parties further stipulate that should this Court find that the $8,128,515 in compensatory damages received by petitioner husband for his fraud claim are properly includable in petitioners' income, then such damages are properly characterized as capital gain rather than ordinary income. On brief, petitioners concede that the $103,341 awarded for petitioner husband's breach of contract claims is includable in gross income.

FINDINGS OF FACT

The parties submitted this case fully stipulated in accordance with Rule 122.  The stipulation of facts, with attached exhibits, is incorporated herein by this reference.

For the calendar year 1990, petitioners filed a joint Federal individual income tax return.  When the petition was filed in this case, petitioners were husband and wife, and resided in Leesburg, Florida.  Hereinafter, references to petitioner are to F. Browne Gregg, Sr., and references to petitioners are to F. Browne Gregg, Sr., and Juanita O. Gregg.

In 1969, petitioner owned corporate businesses in Florida that were engaged in construction, sand mining, and design of dredging equipment.  The businesses had expanded rapidly and were hard pressed for working capital.  As a result, on August 27, 1969, petitioner entered into an "Agreement and Plan of Reorganization" with USI, whereby petitioner transferred to USI the stock of his companies, $1 million in personal capital, and petitioners' $500,000 promissory note in exchange for $3.5 million in common and preferred USI stock.  The agreement provided that, as further consideration, petitioner could receive up to an additional $6.5 million in USI stock if the companies formerly owned by petitioner met specified profitability levels over the next 5 years.  On the date of closing, October 1, 1969, a separate "Employment Agreement" was signed under which petitioner was to remain for 5 years as president and chief operating officer of his former companies.

During the 5 years after the acquisition, USI put some $12 to $14 million into petitioner's former companies and guaranteed some $2 million in loans. Initially, the operations were successful. Petitioner received one distribution of USI stock (called by the parties earn-out stock), valued at $871,484 and based upon 1969 profits. Soon, however, relations between petitioner and USI began to sour. Petitioner's former businesses became less and less successful. USI began limiting petitioner's authority, and ultimately in May 1971, removed him as president and chief operating officer, and appointed him to be a salaried consultant, with little work to perform.

In December 1971, petitioner pledged his USI stock to the First National Bank of Leesburg (Leesburg Bank) as security for a $1.5 million loan. On April 20, 1972, petitioner failed to make an installment payment on the note he had transferred to USI and informed USI he was not going to pay the remaining balance on the note but instead would offset it against USI's outstanding obligations to him. USI stopped paying his salary and requested that Chemical Bank in New York, its stock transfer and dividend disbursing agent, stop payment on petitioner's USI dividends. Under instructions from USI, Chemical Bank delivered petitioner's USI stock dividend checks to USI. On June 15, 1972, petitioner borrowed an additional $135,000 from the Leesburg Bank, assigning as security all dividends from his USI stock. Both petitioner and the Leesburg Bank mailed to USI notice of the assignment.

Later in 1972, the price of USI's stock fell, and the Leesburg Bank issued margin calls to petitioner. When petitioner did not respond, the bank began selling his stock. Petitioner then demanded that USI pay the dividends to the Leesburg Bank, but USI refused. Subsequently, the Leesburg Bank liquidated petitioner's stock because the loans had become under-collateralized.

In 1972, petitioner filed suit in Florida against USI. Petitioner's lawsuit against USI lasted several years and included a jury trial that ended in a mistrial, a second jury trial that was appealed, reversed in part, and remanded (Gregg v. U.S. Indus., Inc., 715 F.2d 1522 (11th Cir. 1983), modified 721 F.2d 345 (11th Cir. 1983)), and a third jury trial that was affirmed by the Court of Appeals for the Eleventh Circuit (Gregg v. U.S. Indus., Inc., 887 F.2d 1462 (11th Cir. 1989)). USI paid petitioner on the judgment in 1990.

The claims on which petitioner prevailed that are relevant to this case are: (1) Common-law fraud; and (2) interference with a business relationship.

The Common-Law Fraud Claim

The crux of petitioner's common-law fraud claim was fraudulent inducement. Petitioner alleged that USI fraudulently promised to provide petitioner's former businesses with capital required for their successful operation, when in fact USI's established financial policies severely limited the cash that it could make available to them for additional working capital.

Petitioner alleged further that USI fraudulently promised to employ him to operate and manage petitioner's former companies when it did not intend to continue him in this position.

The jury returned a verdict awarding petitioner $8,128,515 compensatory damages on his fraud claim. Petitioners excluded this damage award from taxable income on their 1990 Federal income tax return.

## The Claim for Interference with a Business Relationship

In his complaint in the third jury trial, petitioner alleged that USI maliciously interfered with petitioner's business and contractual relationship with Leesburg Bank by withholding payments of dividends on the USI stock that petitioner had pledged as security for loans from the bank, that consequently the bank was required to sell petitioner's stock at a depressed price to satisfy his loans, and that petitioner was deprived of the use and benefit of the dividends and "otherwise damaged".

The jury returned a verdict awarding petitioner compensatory damages in the amount of $43,050 and punitive damages in the amount of $18,500,000, which the trial judge remitted to $2 million. On their 1990 joint Federal income tax return, petitioners included in income $34,748 of the compensatory damages, but excluded from income the remaining amounts received with respect to this claim.

Prejudgment Interest

The trial court awarded petitioner prejudgment interest of $10,823,954 on his fraud claim, and $121,941 on a claim of breach of employment agreement, of which petitioners excluded $10,823,954 on their 1990 Federal income tax return.

Notice of Deficiency

In the notice of deficiency, respondent determined that the amounts USI paid petitioner on his claims for fraud and interference with business relationship were not on account of personal injury or sickness within the meaning of section 104(a), and consequently were includable in petitioners' 1990 taxable income. Respondent also determined that all amounts of prejudgment interest received were includable in petitioners' taxable income.

OPINION

A. Exclusion of Damages Under Section 104

1. In General

Gross income includes income from whatever source derived. Sec. 61(a). Statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 327 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940).

One such statutory exclusion appears in section 104(a)(2), which excludes from gross income "the amount of any damages

received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  The applicable regulations define "damages received" as "an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights".  Sec. 1.104-1(c), Income Tax Regs.

In United States v. Burke, supra at 237, the Supreme Court held that to qualify for the section 104(a)(2) income exclusion, a taxpayer must show that the legal basis for recovery redresses a "tort-like personal injury".

In Commissioner v. Schleier, supra at 336, the Supreme Court concluded that a tort or tort-like claim is a necessary but insufficient condition for excludability under section 104(a)(2). The Supreme Court held that excludability under section 104(a)(2) also requires that the amounts received be "on account of personal injuries or sickness", focusing on whether there is proximate cause between any personal injury and the damages recovered.  Commissioner v. Schleier, supra at 336.

In O'Gilvie v. United States, 519 U.S. 79 (1996), the Supreme Court revisited this issue.  Acknowledging that "the phrase 'on account of' does not unambiguously define itself", the Court rejected an interpretation of section 104(a)(2) that would require no more than a "but-for" connection between personal injuries and damages received, and instead required a "stronger causal connection, making the provision applicable only to those

personal injury lawsuit damages that were awarded by reason of, or because of, the personal injuries". Id. at 83.

Respondent concedes that petitioner's causes of action for fraud and interference with a business relationship sounded in tort. The question for our consideration, then, is whether petitioner's recoveries on these claims were "on account of personal injuries or sickness". This determination is based on all the facts and circumstances, Fabry v. Commissioner, 111 T.C. __, __ (1998) (slip op. at 10), which in the context of litigated claims include the allegations in petitioner's complaints, the evidence presented, and the arguments made in the underlying litigation, Metzger v. Commissioner, 88 T.C. 834, 848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Bent v. Commissioner, 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Seay v. Commissioner, 58 T.C. 32, 37 (1972). The taxpayer bears the burden of proof. Rule 142(a).[2]

It is well settled that "personal injuries" include intangible as well as tangible harms, and nonphysical as well as

---

[2] Respondent argues that petitioner is collaterally estopped from claiming the damages he received were on account of personal injuries, because the jury instructions and appellate decisions in the underlying litigation make it clear, in respondent's view, that petitioner's injuries were not personal. We reject respondent's strained and peculiar theory of collateral estoppel if for no other reason than because the characterization of petitioner's damages for Federal income tax purposes was not essential to and was not litigated in petitioner's prior litigation. See Kightlinger v. Commissioner, T.C. Memo. 1998-357. We have, however, considered the contents of the jury instructions and the appellate decisions as part of our factual inquiry in determining the basis upon which petitioner's damage awards were made.

physical injuries.  Commissioner v. Schleier, supra at 329 n.4; United States v. Burke, supra at 234 n.6; Threlkeld v. Commissioner, 87 T.C. 1294, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988).[3]  In United States v. Burke, supra at 239, the Supreme Court distinguished personal tort-like injuries from "legal injuries of an economic character".  Similarly, in Commissioner v. Schleier, supra at 331, the Supreme Court distinguished "injuries that were personal rather than economic". See also Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part on another issue 70 F.3d 34 (5th Cir. 1995) and cases cited therein (damages are not excludable under section 104(a)(2) if they are "received pursuant to the settlement of economic rights arising out of a contract (e.g., lost profits))"; Kightlinger v. Commissioner, T.C. Memo. 1998-357, and cases cited therein (recovery for injuries to "business or property" is separate and distinct from recovery for personal injuries).

To determine whether damages are received on account of personal injuries under section 104(a)(2), we look to the nature of the claim underlying the damages award.  United States v.

---

[3] In 1996, Congress limited sec. 104(a)(2) to damages received on account of a personal "physical" injury or "physical" sickness, effective generally with respect to amounts received after June 30, 1996.  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838.  Because of the prospective effective date, this amendment does not apply to the case at hand.  The conference report indicates that no inference was intended as to the application of sec. 104(a)(2) prior to June 30, 1996, in connection with a case not involving a physical injury or physical sickness.  H. Conf. Rept. 104-737, at 300 (1996).

Burke, supra at 237; Threlkeld v. Commissioner, supra at 1305.
Our focus is on the nature of the taxpayer's injury and whether
the award was received on account of personal or nonpersonal
injuries. Threlkeld v. Commissioner, supra at 1308; Bennett v.
Commissioner, T.C. Memo. 1994-190.

If damages have been clearly allocated to an identifiable
claim in a court judgment, we are guided by the nature of the
claim as defined under State law personal injury concepts.
Roemer v. Commissioner, 716 F.2d 693, 697 (9th Cir. 1983), revg.
79 T.C. 398 (1982); Threlkeld v. Commissioner, supra at 1305-
1306. Although Federal law rather than State law governs the
characterization of payments for Federal income tax purposes, a
State's characterization of a payment can inform the Federal
decision. Rozpad v. Commissioner, 154 F.3d 1, 6 (1st Cir. 1998),
affg. T.C. Memo. 1997-528.

2. Petitioner's Compensatory Damages for Common-Law Fraud

Petitioners argue that the compensatory damages petitioner
received on his claim for fraud were on account of personal
injury because "the fraud perpetrated on Mr. Gregg violated his
person and his rights and is a personal injury under applicable
State law". Respondent contends that the damages were awarded
for fraud in regard to a sales contract, not for injury to a
person. For the reasons described below, we agree with
respondent that petitioner's damages award on his claim for
common-law fraud was not received on account of a personal injury
within the meaning of section 104(a)(2).

Pursuant to Florida jurisprudence, a claim for common-law fraud requires the following elements:  (1) A false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury to the party acting in reliance on the representation. Azalea Meats, Inc. v. Muscat, 246 F.Supp. 780 (S.D. Fla. 1965), revd. on other grounds 386 F.2d 5 (5th Cir. 1967); Food Fair, Inc. v. Anderson, 382 So. 2d 150 (Fla. Dist. Ct. App. 1980).

Petitioners suggest that the nature of the injury necessary to sustain a claim for fraud under Florida law is inherently personal, noting the availability of remedies for emotional distress and similar personal injuries resulting from the fraud perpetrated.  Petitioners concede on brief, however, that there is nothing in the record to demonstrate that compensatory damages were paid to petitioner on account of emotional stress or "other damages that are classic personal injury damages".  Because our focus is on the injuries that actually affected petitioner's receipt of compensatory damages rather than on other possible injuries, see Commissioner v. Schleier, 515 U.S. 323 (1995), petitioners' argument is unavailing.

Florida law does not appear to rigidly categorize the nature of the injury necessary to sustain a claim for fraud.[4]  We note,

_____

[4] As stated in Food Fair, Inc. v. Anderson, 382 So. 2d 150, 154 (Fla. Dist. Ct. App. 1980):

Florida decisions defining injury go in both directions
(continued...)

however, that under Florida law the award of prejudgment interest on petitioner's fraud claim supports the conclusion that petitioner did not receive the compensatory damages on account of personal injuries. Under Florida law, prejudgment interest is ordinarily not recoverable for personal injury actions, because "the amount and the measure of damages is largely discretionary with the jury and is in consequence unliquidated until the trial". Farrelly v. Heuacker, 159 So. 24, 25 (Fla. 1935); see also Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214 n.1 (Fla. 1985); Zorn v. Britton, 162 So. 879 (Fla. 1935).[5] For similar reasons, prejudgment interest is ordinarily not available as a remedy for an action in tort under Florida law, although prejudgment interest may be awarded where there is an ascertainable out-of-pocket loss as the result of the loss of

----

[4](...continued)
in explaining what constitutes damage sufficient to warrant actionable fraud * * *. Early cases reflect a requirement that the injury sustained must ordinarily be pecuniary in nature. Other Florida decisions seem to align themselves with the general rule * * * [that] Damage need not be subject to accurate measurement in money, but may result from the fact that the defrauded party has been induced to incur legal liabilities or obligations different from those represented or contracted for. * * * [Citations omitted.]

[5] Under Florida law, a personal injury plaintiff may be entitled to prejudgment interest on medical expenses, but only when the plaintiff shows that he has made actual out-of-pocket payments for those expenses prior to judgment. Alvarado v. Rice, 614 So. 2d 498, 500 (Fla. 1993). However, this exception to the general rule applies because such a plaintiff suffers the loss of a vested property right; namely the loss of use of his money. Id. In any event, petitioner has not alleged physical harm, and the record is devoid of any evidence of any medical expenses that he incurred.

vested property rights.  <u>Underhill Fancy Veal, Inc. v. Padot</u>, 677 So. 2d 1378, 1380 (Fla. Dist. Ct. App. 1996).

Petitioners further assert that petitioner's dignitary, or personal, right to be free from fraud and lies is the injury at issue, likening the damages award to an award for libel or slander, in ostensible reliance on <u>Threlkeld v. Commissioner</u>, 87 T.C. at 1308.  In that case, this Court held that compensatory damages received in settlement of the taxpayer's claim for injuries to his professional reputation arising out of a claim for malicious prosecution were excludable from income under section 104(a)(2).  This Court determined that an action for malicious prosecution was similar to an action for defamation and under Tennessee law would be classified as an action for personal injuries.  Adopting a definition of personal injury from the Tennessee Supreme Court, this Court stated:  "Exclusion under section 104 will be appropriate if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law."  <u>Id</u>. at 1308 (paraphrasing <u>Brown v. Dunstan</u>, 409 S.W.2d 365, 367 (Tenn. 1966)).[6]

---

[6] That this definition differentiates between a personal injury and an economic injury is made plain by the more complete discussion in the paraphrased source, which defines personal injuries as "injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. <u>Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property</u>."  <u>Brown v. Dunstad</u>, 409 S.W.2d 365, 367 (Tenn. 1966). (Emphasis added.)

As this Court recently noted in Fabry v. Commissioner, 111 T.C. __, __ (1998) (slip op. at 8), Threlkeld v. Commissioner, supra, did not adopt a per se rule that damages received on account of injury to an individual's business reputation are excludable under section 104(a)(2). Rather, we must look to all the facts and circumstances to determine the nature of the claim. Id. Whether or not the fraud perpetrated upon petitioner may have resulted in some dignitary injury is not controlling. Rather, petitioners must show that the damages received were on account of personal injury and that the personal injury affected the amount of recovery. See Commissioner v. Schleier, supra at 336-337 (settlement amounts received by the taxpayer in settlement of his claim under the Age Discrimination in Employment Act (ADEA) were not on account of personal injuries, notwithstanding that the taxpayer may have suffered some personal injury comparable to pain and suffering).

We look to petitioner's complaints in the USI litigation to determine the nature of his claim. The overwhelming thrust of petitioner's complaints is the adverse effects USI's actions had on his businesses and on his "earn-out" rights that arose out of and were dependent on petitioner's contract with USI. In his restated complaint in the second jury trial, petitioner asked for $15 million in compensatory damages. The complaint particularized these damages to a degree, alleging that petitioner had been deprived of the value of his companies and their businesses "which had a value of at least $10 million", and

that he had been deprived of additional capital contributions that he had made to USI in the amount of $2,671,000. These injuries clearly constitute economic injuries.

Petitioner's restated complaint also alleged that USI caused him to lose the fair value of his earning capacity. This allegation parallels a portion of petitioner's complaint alleging breach of contract. It appears that any such injury was to petitioner's lost ability to take advantage of the contractual "earn-out" provisions, rights that arose out of and were dependent on petitioner's contract with USI. Even if the jury award compensated petitioner for this alleged harm, it would not constitute a personal injury within the ambit of section 104(a)(2). See Robinson v. Commissioner, 102 T.C. 116, 126 (1994) (compensatory damages for compromised economic rights that arise from a contract are not excludable under section 104(a)(2)), affd. in part, revd. in part on another issue 70 F.3d 34 (5th Cir. 1995); Baca v. Commissioner, T.C. Memo. 1990-632.

Petitioner's restated complaint also alleged, without elaboration, damage to his reputation and credit rating. The record, however, does not show that evidence was presented in the USI litigation regarding such injuries or that the damages were awarded by reason of such harms. The mere mention of a particular personal injury in a complaint, without more, does not serve to bring a recovery for damages within the ambit of section 104(a)(2). See Kightlinger v. Commissioner, T.C. Memo. 1998-357 (a contrary rule "would improperly expand the scope of section

104(a)(2) because the * * * [personal injury] language could easily be included in every complaint, even if such a claim were only a 'throwaway' claim").

In closing arguments at the third jury trial, petitioner's counsel characterized petitioner's injuries as damages suffered "by reason of giving up his businesses"; petitioner's counsel made no argument for compensatory damages for any other type of injury. The jury instructions contain no reference to any injuries other than economic harms. The trial court instructed the jury in relevant part as follows:

> Therefore, if you find that * * * [petitioner] has been
> damaged, you should award * * * [petitioner] an amount
> of damages equal to the difference in value between
> what * * * [petitioner] gave USI and the value of what
> he received from USI in return.

Standing alone, the fact that damages are measured in economic terms does not compel the conclusion that the injury redressed is economic rather than personal, for economic loss may be the best available measure of a personal injury. Bent v. Commissioner, 835 F.2d 67, 70 (3d Cir. 1987), affg. 87 T.C. 236 (1986). In the case at hand, however, we believe that the harm which was measured by economic factors was in fact an economic injury. See Kightlinger v. Commissioner, supra (concluding that "economic factors were not merely used as a yardstick to measure the extent of the injury; rather, they were the harm for which petitioner received his compensation").

In sum, petitioners have failed to prove that the compensatory damages awarded on petitioner's common-law fraud

claim were received on account of personal injuries within the meaning of section 104(a)(2). Accordingly, we sustain respondent's determination on this issue.

3. <u>Petitioner's Compensatory Damages for Interference With a Business Relationship</u>

Tortious interference with a business relationship is part of a larger body of tort law aimed at protecting relationships, some economic (for example, interference with prospective economic advantage) and some personal (for example, interference with family relations, or libel and slander). Keeton et al., Prosser & Keeton on Torts, sec. 129, at 978 and nn.5 and 6 (5th ed. 1984). Under Florida law, tortious interference with a business relationship is "basically the same cause of action" as interference with a contract. <u>Smith v. Ocean State Bank</u>, 335 So. 2d 641, 642 (Fla. Dist. Ct. App. 1976).

Petitioner's claim of tortious interference with a business relationship required proof of each of the following three elements: (1) The existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship by the defendant; and (3) damage to the plaintiff as a result of the tortious interference with the relationship. <u>Gregg v. U.S. Indus., Inc.</u>, 887 F.2d 1462, 1473 (11th Cir. 1989).

Petitioner's complaint in the third jury trial focused almost entirely on the economic injury petitioner suffered as a consequence of USI's interference with his business relationship

with the Leesburg Bank.  Although petitioners suggest that petitioner's tortious interference claim might have supported recovery for mental suffering, damage to reputation, or violation of dignitary rights, there is no evidence in the record that petitioner sought or received compensatory damages for any such injuries.[7]

The jury returned a verdict awarding petitioner $43,050 compensatory damages and punitive damages in the amount of $18,500,000, which the trial judge remitted to $2 million. Although the record does not expressly indicate the basis on which the jury determined compensatory damages, it seems most likely that the award was based on the theory outlined in petitioner's trial brief, which explicitly equated his claim to one for "wrongful detention or attachment of property" and which advocated computing his loss by reference to the decrease from $65,125.45 in the value of his USI stock when the Leesburg Bank sold it to satisfy petitioner's loans.

Based on all the evidence, then, we conclude that petitioners have failed to prove that the compensatory damages on the tortious interference claim were received on account of personal injuries within the meaning of section 104(a)(2).

_____

[7] In fact, the record shows that petitioner sought compensatory damages on his tortious interference claim principally as a foothold for a much larger amount of punitive damages.  In his closing arguments in the third jury trial, petitioner's counsel requested only one dollar compensatory damages, stating, "The one dollar on the interference claim will justify your going into the punishment aspect of it and then you can allow punitive damages that will get their attention".

This Court reached a similar conclusion with respect to an analogous claim for tortious interference in Kightlinger v. Commissioner, supra. In that case, the taxpayer received payment in settlement of a claim of tortious interference with prospective economic advantage as an employee. The complaint in the underlying litigation sought a remedy for wrongful interference with economic advantages, and the taxpayer had not sought or obtained redress for any of the traditional harms associated with personal injury such as pain and suffering or emotional distress. This Court concluded: "Clearly, recovery for economic injury based on such a contractual type claim is excluded from the scope of section 104(a)(2)."

Petitioners' reliance on this Court's decision in Noel v. Commissioner, T.C. Memo. 1997-113, is misplaced. In Noel, this Court held that the taxpayer was entitled to exclude under section 104(a)(2) an allocable amount received by the taxpayer in settlement of claims, including a claim for tortious interference with contractual rights and prospective business advantages. In Noel, the record supported a finding of fact that the taxpayer had suffered both personal emotional distress and damage to his business reputation, and that these damages had been discussed during the negotiations that resulted in a settlement.

By contrast, in the case at hand, petitioners have failed to prove that the damages award on petitioner's claim for interference with a business relationship was received on account

of personal injuries within the meaning of section 104(a)(2). Accordingly, we sustain respondent's determination on this issue.

B. <u>Prejudgment Interest</u>

Petitioners contend that the prejudgment interest they received is excludable under section 104(a)(2) as damages received on account of personal injuries. As petitioners acknowledge, however, the well-established precedents in this Court hold that prejudgment interest is taxable even when attributable to damages excludable under section 104(a)(2). See, e.g., <u>Bagley v. Commissioner</u>, 105 T.C. 396, 419-420 (1995); <u>Kovacs v. Commissioner</u>, 100 T.C. 124, 129-139 (1993), affd. without published opinion 25 F.3d. 1048 (6th Cir. 1994); <u>Rozpad v. Commissioner</u>, T.C. Memo. 1997-528, affd. 154 F.3d 1 (1st Cir. 1998).

Having concluded that petitioner's damages were not received on account of personal injuries within the meaning of section 104(a)(2), a fortiori we conclude that petitioner's prejudgment interest was not attributable to personal injuries, and we decline petitioners' invitation to disturb the well-established precedents of this Court.

C. <u>Evidentiary Issues</u>

In the parties' stipulation of facts, respondent reserved certain evidentiary objections that we now address.

Paragraph Nos. 25 and 26 of the stipulation of facts relate to the nature of petitioner's business acumen and personal

traits.[8]  Respondent objects to these stipulations on the grounds that they are hearsay and lack relevance.  We sustain respondent's objections on the grounds that petitioner's personal characteristics as described in these stipulations have no bearing on whether the damages he received were on account of personal injuries.

Respondent further objects to Joint Exhibits 3-C, 10-J, 12-L and stipulation of facts paragraph No. 31 on the basis that each merely contains excerpts from other more complete exhibits, and thus is neither independently relevant or complete.  We sustain respondent's objections and note that the evidence remains available elsewhere in the record.  See Fed. R. Evid. 106, 401.

Finally, on the grounds of relevancy and hearsay, respondent objects to joint exhibits 5-E and 11-K, which contain transcripts of the closing arguments made by petitioner's attorney during the second and third jury trial, respectively.  We overrule respondent's objections on this issue, for this Court considers all the facts and circumstances, including arguments made at trial, in determining whether a taxpayer received damages on account of a personal injury under section 104(a)(2).  Bent v. Commissioner, 87 T.C. at 245.  Furthermore, the closing arguments are not hearsay because, as the stipulation of facts introducing

---

[8] Stipulation of Facts, par. 25 states: "Mr. Gregg has been described as an entrepreneur, a man who has imagination, and a man with innovative ideas".

Stipulation of Facts, par. 26 states:  "Mr. Gregg is a unique and creative business person".

the exhibit states, the exhibit is not offered to prove the truth of the matters asserted. See <u>Knevelbaard v. Commissioner</u>, T.C. Memo. 1997-330.

We have considered all other arguments advanced by the parties, and to the extent we have not addressed these arguments, consider them irrelevant, moot, or without merit.

To reflect the foregoing and concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.