T.C. Memo. 2001-245


UNITED STATES TAX COURT


F. BROWNE GREGG, SR., AND JUANITA O. GREGG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket No. 13188-96.                    Filed September 19, 2001.


<u>Bernard A. Barton, Jr.</u> and <u>Harold R. Bucholtz</u>, for

petitioners.

<u>J. Michael Melvin</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


THORNTON, <u>Judge</u>:  In this Court's original opinion, T.C.

Memo. 1999-10, vacated and remanded (11th Cir., Sept. 19, 2000),

we held that jury awards paid to petitioner husband (hereinafter

_____

        * This opinion supplements our prior opinion in <u>Gregg v.</u>
<u>Commissioner</u>, T.C. Memo. 1999-10, vacated and remanded (11th
Cir., Sept. 19, 2000).

petitioner) pursuant to judgments against U.S. Industries, Inc. (USI), on claims for both fraudulent inducement to enter into a contract and tortious interference with a business relationship, plus prejudgment interest, are not excludable from gross income as damages received "on account of personal injuries or sickness" within the meaning of section 104(a)(2).[1]  In reaching this conclusion, we cited Fabry v. Commissioner, 111 T.C. 305 (1998), for the proposition that we must look to all the facts and circumstances to determine the nature of petitioner's claims against USI and whether his recoveries on those claims were on account of personal injuries or sickness.

While the instant case was pending on appeal there, the U.S. Court of Appeals for the Eleventh Circuit reversed this Court's decision in Fabry, stating that the "facts and circumstances approach" used therein was "insufficient."  Fabry v. Commissioner, 223 F.3d 1261, 1269 (11th Cir. 2000). Thereafter, the Court of Appeals vacated our decision in the instant case and remanded it for further consideration in light of its decision in Fabry, stating:  "We imply no view as to the result that should be reached on remand."

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In <u>Fabry</u>, the question was whether a $500,000 payment the taxpayers received for damage to their business reputation in settlement of a tort action was excludable from gross income as damages received "on account of personal injuries or sickness" within the meaning of section 104(a)(2). The Court of Appeals stated that the IRS had stipulated that the $500,000 payment was properly allocable as damage to the Fabrys' business reputation. <u>Id.</u> at 1268. The Court of Appeals found on the basis of the "unique facts" presented that the Fabrys' business was so much a part of their persona that "Their business reputation was their personal reputation." <u>Id.</u> at 1270. The Court of Appeals found that the Fabrys had suffered "distress, humiliation and mental anguish * * * through the loss of their good name". <u>Id.</u> Accordingly, the Court of Appeals concluded that the $500,000 the Fabrys received on account of injuries to their business reputation was received on account of personal injuries and thus was excludable from gross income under section 104(a)(2).

In the instant case, by contrast, the parties have not stipulated that any part of the jury awards that petitioner received is properly allocable to damage to his reputation or to any other particular type of injury, personal or otherwise.

Petitioners bear the burden of proof. See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>Feldman v. Commissioner</u>, 20 F.3d 1128, 1132 (11th Cir. 1994) (the

Commissioner's determination of a deficiency is ordinarily presumed correct, and the taxpayer has the burden of proving it is erroneous or arbitrary), affg. T.C. Memo. 1993-17.  As we discussed in our original opinion and as further discussed below, petitioners have failed to show that the subject jury awards were received on account of personal injuries such as distress, humiliation, mental anguish, or any other type of personal injury.  Indeed, the record does not establish that petitioner suffered personal injuries.  To the contrary, as discussed in our original opinion and below, the evidence strongly indicates that the injuries redressed by the jury awards in question were economic injuries.[2]

Petitioner's Compensatory Damages for Fraudulent Inducement

On supplemental brief, petitioners argue, in conclusory fashion and without any references to the pages of the transcript, the exhibits, or other sources relied upon to support

---

[2] As we discussed in our original opinion, in construing sec. 104(a)(2), the Supreme Court and other courts have distinguished personal injuries and economic injuries.  In Fabry v. Commissioner, 223 F.3d 1261, 1270 (11th Cir. 2000), revg. 111 T.C. 305 (1998), the Court of Appeals appeared to recognize this distinction, stating that in a nonphysical personal injury case, the taxpayer must establish a direct causal link between the damages received and "an intangible element of the injury (i.e., emotional distress, pain and suffering, loss of reputation, etc.)."  Similarly, the Court of Appeals distinguished between compensation paid to replace the lost value of the Fabrys' business and amounts paid to compensate them for "distress, humiliation and mental anguish suffered by the Fabrys through the loss of their good name".  Id.

their statements, that USI's fraudulent conduct caused petitioner to suffer damage to his business reputation and credit. Statements in briefs do not constitute evidence. Rule 143(b). We have found no evidence in the record that credibly supports petitioners' allegations of personal injury to petitioner. By contrast, in Fabry v. Commissioner, 223 F.3d at 1263 n.4, 1270, the Court of Appeals found evidence in the record that the Fabrys endured personal embarrassment, lost friends, were forced to withdraw from trade organizations, and suffered health consequences. Unlike the taxpayers in Fabry, petitioner did not operate the businesses in question as sole proprietorships and has not established that his personal name was synonymous with his businesses.

Moreover, as we discussed in our original opinion, the record does not show that petitioner presented evidence in the USI litigation regarding any personal injuries or that petitioner made any specific request to the jury for an award to compensate him for any personal injuries.

Petitioners seem to suggest that we should assign no significance to the absence of evidence supporting their contentions that petitioner sustained personal injuries and received damages on account of those personal injuries. On supplemental brief, petitioners argue that "fraud is an inherently personal dignitary tort, and, as a result, all the

damages received on the fraud claim are excludable from income."
Petitioners suggest that because petitioner successfully
prosecuted claims against USI for fraudulent inducement and
because such claims generally may encompass personal injuries,
any damages petitioner received necessarily must have been on
account of personal injuries.

In effect, then, petitioners would have us make an a priori
determination, seemingly without reference to empirical evidence,
that all damages awarded on petitioner's fraudulent inducement
claim necessarily must have been received on account of personal
injuries.  Petitioners suggest that the Court of Appeals'
decision in Fabry mandates this conclusion.  For the reasons
discussed below, we disagree.

As the Court of Appeals discussed in Fabry, the Supreme
Court in Commissioner v. Schleier, 515 U.S. 323, 336 (1995),
found that before a recovery may be excluded under section
104(a)(2), a taxpayer must meet two "independent requirements":
(1) The taxpayer must show that the underlying cause of action is
based upon "tort or tort type rights"; and (2) the taxpayer must
show that "the damages were received on account of personal
injuries or sickness."  If petitioners were correct in their
argument that personal injuries inhere in certain types of torts
(such as fraudulent inducement) so as to satisfy automatically
the conditions of section 104(a)(2), the result would be to

render superfluous the second <u>Schleier</u> requirement for such torts, thereby contradicting the Supreme Court's characterization of these two requirements as "independent". <u>Id.</u>

Petitioners' argument is plainly incorrect, however, proceeding as it does from a faulty premise that a tort-based cause of action for fraudulent inducement protects only inherently personal rights, such as dignitary rights. It is hornbook law that torts generally encompass not just invasions of personal dignitary rights but any "civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." Keeton et al., Prosser & Keeton on the Law of Torts, sec. 1, at 2 (5th ed. 1984). More particularly, although the tort of fraud might involve personal injury, it generally involves "'injury to property rather than to person'". <u>Food Fair, Inc. v. Anderson</u>, 382 So. 2d 150, 154 (Fla. Dist. Ct. App. 1980) (quoting 37 Am. Jur. 2d, Fraud and Deceit, sec. 292 (1968)). In a fraudulent inducement claim, "'Generally, the plaintiff's loss is a purely economic loss'". <u>HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.</u>, 685 So. 2d 1238, 1240 (Fla. 1996) (quoting with approval from the dissent in <u>Woodson v. Martin</u>, 663 So. 2d 1327, 1330 (Fla. Dist. Ct. App. 1995), revd. 685 So. 2d 1240 (Fla. 1996)).

Consequently, contrary to petitioners' argument and consistent with the two-prong test enunciated in <u>Schleier</u>, the

mere fact that petitioner's underlying cause of action against USI was based on the tort of fraudulent inducement does not in and of itself satisfy the independent requirement that petitioners must show that the damages received were on account of personal injuries or sickness.

The Court of Appeals in Fabry v. Commissioner, 223 F.3d at 1270, concluded, on the basis of its review of relevant Supreme Court and other judicial precedents, that to qualify for the exclusion under section 104(a)(2), "a cause and effect relationship must be established between the tort, the personal injury resulting, and the amount received in settlement." Thus, in a nonphysical personal injury case:

> each element of the tort settlement must be examined to determine whether there is a direct causal link between such element and an intangible element of the injury (i.e., emotional distress, pain and suffering, loss of reputation, etc.). If such a link is found, it would seem to satisfy Schleier and payments received for such damage, including losses of earning capacity and the like, would be excludable. [Id.; emphasis added.]

In a footnote, the Court of Appeals observed that the Supreme Court in Schleier, in requiring such a causal analysis, "did not explain exactly what the link was nor how close the link must be for a recovery to qualify for a IRC sec. 104(a)(2) exclusion." Id. at 1266 n.16. The Court of Appeals noted, however, that in holding that damages received in settlement of an age discrimination claim under the Age Discrimination in Employment Act of 1967 were not excludable under section

104(a)(2), the Supreme Court in <u>Schleier</u> had concluded that although the taxpayer's "unlawful termination may have caused him some pain, suffering and emotional distress such as that suffered by an automobile accident victim, no personal injury had been suffered <u>affecting the amount of back wages recovered</u>." <u>Id.</u> at 1267 (emphasis added). The Court of Appeals further noted that in <u>O'Gilvie v. United States</u>, 519 U.S. 79 (1996), the Supreme Court had revisited, in the context of an award of punitive damages, the causal analysis mandated by <u>Schleier</u> and had rejected a "but-for" causal analysis in favor of an "interpretation under which only those damages were excludable that were awarded 'by reason of' or 'because of' the personal injuries." <u>Fabry v. Commissioner</u>, 223 F.3d at 1269 n.25. The Court of Appeals stated:

> <u>O'Gilvie</u> is consistent with <u>Schleier</u> because punitive damages do not bear the direct causal link with the victim's personal injury <u>since the amount of punitive damages awarded generally varies positively with the degree of the tortfeasor's conduct, not with the extent of the injury sustained</u>. * * * [<u>Id.</u> at 1270 n.25; emphasis added.]

On the basis of the Court of Appeals' analysis in <u>Fabry</u> of these Supreme Court precedents, then, it would appear that the "direct causal link" between damages awarded and personal injuries sustained depends, at least in part, on whether personal injuries sustained affected the amount of damages received. As previously discussed, petitioners have failed to show that the

amount of damages petitioner received on his fraudulent inducement claim was affected by any personal injuries that he might have suffered.

In the USI litigation, the jury awarded petitioner $8.1 million in compensatory fraud damages but only $1 on his breach of contract claim. From this circumstance, petitioners would have us deduce that the entire $8.1 million fraud damages award was for noneconomic, personal injuries. Their argument on supplemental brief is as follows:

> Clearly, the jury understood Mr. Gregg's contract claim, but elected to award damages to Mr. Gregg for his personal injury, not any injury to an economic, contract, or property right he possessed. The fact that Mr. Gregg was awarded nominal damages on his contract claim indicates that the jury intended the fraud damages to compensate some other injury.

Petitioners' argument is a non sequitur. Implicit in their argument is an assumption that damages awarded on a fraudulent inducement claim cannot compensate for economic losses--a proposition for which petitioners cite no authority and which, as previously discussed, is contrary to Florida jurisprudence. See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., supra at 1238; Woodson v. Martin, 685 So. 2d 1240 (Fla. 1996). The fact that the same measure of damages might have been employed under the breach of contract claim does not preclude the tort remedy to recover economic losses. See La Pesca Grande Charters, Inc. v. Moran, 704 So. 2d 710, 712 (Fla. Dist. Ct. App. 1998). It seems

most likely that in awarding only $1 on the breach of contract claim, the jury was simply following the trial judge's instructions to avoid awarding duplicate damages.[3]

As an alternative to their principal argument that the entire $8.1 million of compensatory fraud damages was on account of personal injuries, petitioners argue on supplemental brief that these damages should be allocated between damages for personal and nonpersonal injuries. In an attempt to align themselves with the "unique facts" of Fabry,[4] petitioners argue that the Court of Appeals' decision in Gregg v. U.S. Indus., Inc., 887 F.2d 1462 (11th Cir. 1989), must be read as limiting petitioner's economic damages on the fraudulent inducement claim to no more than $5.6 million, thereby relegating $2.5 million of the total $8.1 million fraud damages to noneconomic losses.

_____

[3] The jury instructions in the second jury trial stated:

>       You should consider the fraud claim and the breach of contract claim as separate and distinct claims; however, any damages you may award on one of these claims may not be included in the damages on the other claim.

[4] In Fabry v. Commissioner, 223 F.3d at 1270, the Court of Appeals noted that after the tortfeasor had paid the taxpayers $3.3 million to restore the lost value of their "business qua business * * * something intangible remained." The Court of Appeals concluded that under the "unique facts" of Fabry, the additional $500,000 that was allocated to business reputation represented compensation for this "something intangible", which the Court of Appeals concluded was for personal injuries. Id.

Petitioners' alternative argument is without merit. Their characterization of the Court of Appeals' opinion in Gregg v. U.S. Indus., Inc., supra, is (viewed charitably) inaccurate. After the jury awarded petitioner $8.1 million on his fraudulent inducement cause of action, USI appealed the verdict to the Court of Appeals for the Eleventh Circuit, arguing that the trial court had erred in instructing the jury to measure damages on an "out-of-pocket" rather than a "benefit of the bargain" basis. Id. at 1465. USI argued that, under a "benefit of the bargain" approach, the maximum amount that petitioner could have recovered for the fraud was $5.6 million--or $2.5 million less than the $8.1 million that the jury actually awarded him. The Court of Appeals rejected USI's argument, however, and held that there was no error in the jury's use of the out-of-pocket measure of damages. See id. at 1467.

In seeking to rely upon Gregg v. U.S. Indus., Inc., supra, petitioners seem to have confused the rejected argument advanced by USI with the holding of the Court of Appeals. In fact, the Court of Appeals' holding bolsters the view that the fraud damages represented compensation for petitioner's economic losses rather than for any personal injury. The Court of Appeals stated:

> The jury assessed the evidence presented regarding the value of Gregg's companies prior to the closing with USI and awarded Gregg an out-of-pocket amount of damages representing that value less the value of the

stock he received from USI.  This approach restored Gregg to the position he was in prior to his dealings with USI; a measure wholly consistent with the dictates of Florida law.  * * *  [Id. at 1467.]

In sum, petitioners have failed to carry their burden to "show that the damages were received 'on account of personal injuries or sickness.'"  Commissioner v. Schleier, 515 U.S. at 337.  Accordingly, we adhere to our original conclusion that petitioners have failed to prove that the compensatory damages awarded on the fraudulent inducement cause of action were received on account of personal injuries within the meaning of section 104(a)(2).

Petitioner's Compensatory Damages for Tortious Interference With a Business Relationship

Petitioners present similar conclusory arguments to support their contention that the $43,050 jury award for tortious interference with a business relationship was received on account of personal injury.  Their primary argument parallels an argument that we have previously considered and rejected in the context of petitioner's damages award for fraudulent inducement: petitioners argue that injuries suffered as a result of tortious interference with business relationships are "inherently personal, dignitary injuries."  Thus, petitioners contend that the entire jury award on this cause of action is excludable under section 104(a)(2).

As previously discussed, damages received in a tort action may be excluded from income only when received on account of personal injuries or sickness. As noted in our original opinion, tortious interference with a business relationship is part of a larger body of tort law aimed at protecting relationships, some economic (for example, interference with prospective economic advantage) and some personal (for example, interference with family relations, or libel and slander). Keeton et al., Prosser & Keeton on the Law of Torts, sec. 129, at 978 and nn.5 and 6 (5th ed. 1984). Petitioners have failed to demonstrate that the jury award for tortious interference with a business relationship was on account of anything other than injury to petitioner's economic relationship with his bank.

Petitioners' reliance on Noel v. Commissioner, T.C. Memo. 1997-113 (holding that part of a settlement payment attributable to a tortious interference claim was on account of personal injuries), is misplaced. In Noel, the evidence before the Court indicated that the tortfeasor's actions caused the taxpayer to suffer emotional distress and damage to his business reputation, that the taxpayer discussed these damages with the tortfeasor during the settlement negotiations, and that the payment by the tortfeasor was intended partly to cover this tort claim.

The only evidence petitioners cite to support their argument that the tortious interference award was on account of personal

injuries consists of certain remarks that petitioner's counsel made in closing arguments in the third jury trial. Although petitioners have neglected to favor us with citations to the record source of these remarks (which petitioners have paraphrased on brief), our independent perusals of the lengthy record have brought to light the following remarks in closing arguments in the USI litigation, which we infer are the remarks upon which petitioners seek to rely:

> USI interfered * * * with * * * [petitioner's] relationship [with the Leesburg Bank], because after it learned that the dividends had been assigned to the bank, it wouldn't let the dividends go to the bank. They just hid them, sat on them like a dog in a manger. They couldn't cash them, they just held them. Well, we know that that caused problems with Gregg's relationship with the bank. Thereafter, when he tried to make loans, he was turned down by the bank. We can't tell you what the damage amount is, but they damaged him, they wronged him and the damages should be one dollar nominal damages.

> *     *     *     *     *     *     *

> The one dollar on the interference claim will justify your going into the punishment aspect of it and then you can allow punitive damages that will get their attention.

From these remarks, it seems clear that the injury complained of was to petitioner's business relationship with the Leesburg Bank and to his prospective economic advantage in being able to borrow money there.

Ultimately, the jury returned a verdict awarding petitioner $43,050 compensatory damages and $18.5 million punitive damages,

which the trial judge remitted to $2 million.  On supplemental brief, petitioners argue:  "The lack of any direct correlation between the amount of damages and any identifiable economic injury confirms that the jury intended to compensate Mr. Gregg for his intangible personal injury."  As we discussed in our original opinion, however, petitioner's trial brief in the USI litigation equated petitioner's tortious interference claim to one for "wrongful detention or attachment of property" and advocated computing damages by reference to petitioner's economic loss occasioned when the Leesburg Bank sold the USI stock at a depressed value to satisfy petitioner's outstanding loans.  The opinion of the Court of Appeals in the USI litigation, in affirming the $43,050 jury award for tortious interference, confirms this direct correlation between the amount of damages awarded by the jury and petitioner's economic injury:

> Gregg also presented evidence "that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions" concerning the damages he suffered as a result of USI's interference with his business relationship with the Leesburg bank. Gregg introduced evidence that because USI refused to pay his dividends to the Leesburg Bank, the bank was required to sell Gregg's stock, which was declining in value, to satisfy his loans.  Gregg also testified at trial that he was unable to obtain loans from the Leesburg Bank following USI's actions in refusing to disburse the declared dividends.  This testimony was not objected to nor contradicted by USI.
>
> The jury, in considering all the evidence presented over several days of trial and all the reasonable inferences to be drawn from that evidence, including Gregg's uncontroverted testimony, could find

that USI's actions regarding the dividends and the Leesburg Bank caused Gregg damage.  In addition, the jury could have determined that had USI released the dividends, the Leesburg Bank would not have liquidated Gregg's stock, a drastic measure taken by banks when loans become undercollateralized or no longer secured to the bank's satisfaction, prevention or delay of which would have been a benefit to Gregg; a benefit which he was denied, thus causing him damage.

We hold that the evidence in the record supports the jury's determination that Gregg established his claim for tortious interference with his business relationship.  The jury's award of $43,050 in compensatory damages was also supported by the range of the evidence.  * * *  [Gregg v. U.S. Indus., Inc., 887 F.2d at 1475; citations omitted.]

In sum, the evidence clearly indicates a direct correlation between petitioner's damages award for tortious interference and his economic injuries.  Petitioners have failed to show that the amount of damages was affected by any personal injuries--indeed, the Court of Appeals' discussion supra strongly suggests that it was not.  Accordingly, we adhere to our original conclusion that petitioners have failed to show that the damages awarded for tortious interference were received on account of personal injuries or sickness within the meaning of section 104(a)(2).

Prejudgment Interest

In our original opinion, we followed well-established precedents in holding that petitioner's award of prejudgment interest was not excludable from gross income under section 104(a)(2).  See Bagley v. Commissioner, 105 T.C. 396, 419 (1995), affd. 121 F.3d 393 (8th Cir. 1997); Kovacs v. Commissioner, 100

T.C. 124, 129-130 (1993), affd. per curiam without published opinion 25 F.3d 1048 (6th Cir. 1994); Rozpad v. Commissioner, T.C. Memo. 1997-528, affd. 154 F.3d 1 (1st Cir. 1998); see also Brabson v. United States, 73 F.3d 1040 (10th Cir. 1996). In Fabry, neither the Tax Court nor the Court of Appeals addressed the taxation of prejudgment interest. We conclude that nothing in the Court of Appeals' remand requires us to reconsider our findings in this regard.

> Decision will be entered for the same year in the same amounts as previously entered in this case.