Johnny L. BANKS; Edna J. Banks, husband & wife and their marital community, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 95–35045.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1996.

Decided April 16, 1996.

Kenneth C. Weil, Seattle, Washington, for plaintiffs-appellees.

Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Kenneth L. Greene, and Jonathan A. Wasserman, United States Department of Justice, Washington D.C., for defendant-appellant.

Before: FLETCHER, JOHN T. NOONAN, Jr., and RYMER, Circuit Judges.

## OPINION

NOONAN, Circuit Judge:

The United States appeals a judgment of the district court granting a refund of federal income tax to Johnny and Edna Banks on the grounds that the tax was imposed on the proceeds of a settlement with his union for breach of the duty of fair representation and that the proceeds were excludable from gross income under Internal Revenue Code § 104(a)(2). Holding that the settlement with the union was for a tort-like injury and that the sum received was not wages but compensation on account of personal injuries, we affirm the district court.

### FACTS

The facts that preceded the settlement are set out in *Banks v. Bethlehem Steel Corporation,* 870 F.2d 1438 (9th Cir.1989), as follows: Johnny Banks had an unblemished employment record of 12 years of exemplary service at Bethlehem Steel Corporation (Bethlehem). After working double shifts and logging in a total of 70 hours in four days, he arrived home in the early morning of July 27, 1984 to be called back for another double shift to begin at 5:00 a.m. He did go back at 10:00 a.m. into a mill where the temperature was well over 100 degrees. The ventilation was poor. He took a fan to improve it. A fellow worker, Davis, attempted to claim the fan for

himself. A tug of war resulted, at the end of which Davis, a former boxer, punched Banks so hard that he fell to the ground unconscious, receiving a wound to his forehead that took 32 stitches to close. Under Bethlehem's policy against fighting, both Banks and Davis were suspended with intent to discharge. In the grievance procedure that followed, Tom Hughes, a representative of United Steel Workers of America (the Union) represented both employees and engineered a settlement for both, with the agreement that each employee would get $3,000 from Bethlehem and a "voluntary quit," rather than a discharge. Banks vehemently objected to the terms of this agreement. *Id.* at 1440.

Banks then brought suit against Bethlehem and the Union, alleging that Bethlehem had discharged him without just cause and had acted with racial animus in violation of Title VII, 42 U.S.C. § 2000e, and that the Union had breached its duty of fair representation. The district court granted summary judgment to the Union on the fair representation claim, and the remaining parties proceeded to trial. The court entered judgment for Bethlehem on the race discrimination claims and held that Banks could not proceed against Bethlehem on the unjust discharge claim because he had failed in his claim against the Union. *Id.* at 1440–1441.

On appeal we affirmed the judgment for Bethlehem on the Title VII claim but reversed and remanded on the breach of fair representation claim, holding that summary judgment had been inappropriate. We found two issues open for trial: whether Hughes' decision to settle had been made in good faith and whether the Union's policy of not calling employee witnesses to testify against fellow employees was arbitrary. *Id.* at 1445.

On remand, a bench trial followed, at the end of which the district court held that Banks "was not discharged for just cause" and "would have been reinstated after an arbitration." The court also held that Banks had been prejudiced by the Union's policy as to employee witnesses and that the Union had acted in bad faith in refusing to take the matter to arbitration. The court found Banks' damages to be $134,532, measured by the court's estimate of Banks' past and future wages.

After the court had issued its findings and conclusions of law but before the entry of judgment, the parties settled. Bethlehem paid Banks $28,500 to settle the claim of wrongful discharge, of which after paying attorneys fees and costs Banks received $14,-000. The Union paid Banks $150,000 for the settlement of the claim for breach of duty of fair representation, of which, after paying attorneys fees and costs, Banks received $80,568.36.

Johnny and Edna Banks filed a joint return for the 1990 tax year. They reported the amount received from Bethlehem as income from settlement of a breach of contract. They excluded the settlement from the Union under 26 U.S.C. § 104(a)(2). In 1992 the Internal Revenue Service examined their return and recommended including the amount from the Union in their income for 1990. The Banks paid the proposed deficiency plus interest, and in June 1993 filed a claim for refund. The claim was denied, and this litigation ensued.

## PROCEEDINGS

In the district court the parties cross-moved for summary judgment on the issue of whether the proceeds of the settlement with the Union were excludable under 26 U.S.C. § 104(a)(2). The district court followed the law of the circuit as set out in *Hawkins v. United States,* 30 F.3d 1077 (9th Cir.1994), holding that to exclude the income the taxpayer had to show that the underlying cause of action was "tort-like" and that the damages were received on account of personal injury. The district court found that Banks' claims for breach of the duty of fair representation were for unfair and arbitrary treatment and were, therefore, tort-like. The court found that the recovery that he received from the Union was on account of personal injury. It therefore granted the refund.

The United States appeals.

## ANALYSIS

The statute provides:

... [G]ross income does not include—... (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries* or sickness;

26 U.S.C. § 104(a)(2) (emphasis added). The Treasury Regulation to this section provides additionally:

The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. 26 C.F.R. § 1.104–1(c).

■ The language of the statute and the gloss of the regulation have recently been repeated by the Supreme Court. *Commissioner of Internal Revenue v. Schleier,* —— U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995). As the Court restated, both conditions must be met. The injury must be tort-like. The payment must be on account of personal injuries. Specifically, in *Schleier* the Court held that a settlement of an action for damages under the Age Discrimination in Employment Act (ADEA) was not excludable from gross income. The reason was half of the award was attributed to liquidated damages, and the Court had already held that liquidated damages are punitive and not compensation for personal injuries, *id.* at ——, 115 S.Ct. at 2165, and the rest of the taxpayer's award was clearly attributed to "back pay" so that the settling employer had even withheld taxes on what were wages. *Id.* at ——, 115 S.Ct. at 2162.

The United States argues that *Schleier* controls this case, maintaining that everything that Banks received from the Union was for lost wages because the settlement was effected in light of the district court's finding that Banks was entitled to $134,533 from the Union measured by past and future wage loss. In *Schleier,* the Court was determining the nature of damages awarded under ADEA. The Act allows damages only for lost pay enhanced in certain cases by an equal amount of punitive damages. It does not allow recovery for emotional distress or other injury from the discrimination. Were such recovery allowable, the Court acknowledged the injury would qualify as "personal injury" under the Internal Revenue Code. *Id.* at ——, 115 S.Ct. at 2164. Because the recovery in *Schleier* was economic compensation, it fell within what the Court has repeatedly referred to as the "sweeping scope" of the Internal Revenue Code taxation of "gross income," which the Code defines as "all income from whatever source derived." *Id.* at ——, 115 S.Ct. at 2163; 26 U.S.C. § 61(a).

■ *Schleier,* however, was determined by the specific limitations of the ADEA and has no application here where neither punitive damages nor back wages were offered in the settlement. Unions do not pay wages to their members, and what the Union paid in settlement here to Banks did not constitute wages. It paid damages to compensate for its unfair and arbitrary treatment of Banks, conduct that the court had found to be in bad faith and in violation of the Union's duty to fairly represent Banks. We look to the nature of the injuries that were being compensated. *Roemer v. Commissioner of Internal Revenue,* 716 F.2d 693, 697 (9th Cir.1983). Banks' injuries were, as the district court found, personal injuries. Consequently, the settlement was of a tort-like cause of action and the sum paid was on account of personal injuries and by statute excluded from gross income.

**AFFIRMED.**

RYMER, Circuit Judge, dissenting:

This is a close call but at the end of the day, I believe that whether a settlement consists of back pay that is excludable under 26 U.S.C. § 104(a)(2) turns not on who is making the payment but on what is being compensated. *Commissioner of Internal Revenue v. Schleier,* —— U.S. ——, ——, ———— ——, 115 S.Ct. 2159, 2164, 2166–67, 132 L.Ed.2d 294 (1995). Arbitrary treatment by a union in breach of its duty of fair representation potentially could cause both personal

injury and loss of wages.[1] In this case, the parties agreed that Banks suffered a non-physical, personal injury. However, so far as I can tell, there is no indication that Banks's lost wages resulted from being out of work because of his intangible personal injuries. Thus, even though the Union's breach of duty may have caused intangible personal injury, *that* injury did not cause Banks to lose wages. He lost wages because he was discharged, and because the Union failed to grieve; the personal injury did not affect the amount of back wages recovered. As I read *Schleier*, the two must be linked in order for a recovery of lost wages to be "on account of" personal injury. I would, therefore, reverse.

---

**1.** Although unions don't pay wages, when a union member successfully sues his union for breach of the duty of fair representation for failing appropriately to grieve his wrongful termination, the employee/union member is routinely awarded damages measured by his lost wages.

See, e.g., *Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir.1986).