T.C. Memo. 1999-394

UNITED STATES TAX COURT

STEVEN P. AND MAUREEN CADE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22819-97.            Filed December 3, 1999.

<u>Charles W. Becker</u>, for petitioners.

<u>Thomas A. Dombrowski</u>, for respondent.


MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case is before the Court fully
stipulated.  See Rule 122.  Respondent determined a $646,800
deficiency in petitioners' 1993 Federal income tax.  Respondent
later asserted in his amended answer that the deficiency was
$651,000.

We must decide whether section 104(a)(2) allows petitioners to exclude from their gross income certain proceeds received in settlement of a lawsuit. We hold it does not. Unless otherwise indicated, section references are to the Internal Revenue Code applicable to 1993, and Rule references are to the Tax Court Rules of Practice and Procedure. The term "petitioner" refers to Steven P. Cade.

## Background

All facts have been stipulated. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioners are husband and wife, and they resided in Carlsbad, California, when we filed their petition. They filed a joint 1993 Federal income tax return.

On August 17, 1990, petitioner agreed with CG Merger Corp. (CG Merger) to sell to it for $850,000 all of the stock of Cade-Grayson Co. (CGC). CGC Merger's shareholders were John R. Heller (Mr. Heller), Heller Seasonings & Ingredients, Inc. (Heller Seasonings), and the James R. Heller Trust (Heller Trust) (collectively, Heller Group). Petitioner and CGC also agreed on that date that petitioner would serve as CGC's president and chief executive officer for five years in exchange for (1) an annual salary, (2) incentive compensation, (3) supplemental incentive compensation, (4) life, disability, and health insurance, (5) perquisites and expense reimbursements, and (6)

all employee benefits.  CG Merger financed its purchase of petitioner's CGC stock with Harris Trust and Savings Bank (Harris).

CGC fired petitioner on December 5, 1991, in contravention of their employment agreement.  Two years later, petitioner filed a lawsuit (lawsuit) against CGC, CG Merger, the Heller Group, Harris, and Does 1 through 40 (collectively, defendants) in the Superior Court for the State of California for the County of San Diego (superior court).  Petitioner alleged in his first amended complaint the following causes of action:  (1) CGC breached its employment agreement with him, (2) Harris, Mr. Heller, Heller Seasoning, and Does 1 through 10 purposely and with malicious intent interfered with and induced the breach of that agreement, (3) Harris, Mr. Heller, Heller Seasonings, and Does 1 through 10 purposely and with malicious intent interfered with petitioner's prospective economic advantage as to the employment agreement and his sale of CGC, (4) Mr. Heller, Heller Seasonings, CG Merger, and Does 11 through 20 made false representations to petitioner to induce him to sell his stock and to enter into the employment agreement, with the understanding that he would never receive the benefits promised with respect thereto, (5) CGC and CG Merger breached their duty to deal fairly and in good faith with petitioner as to the employment and stock purchase agreements,

(6) CGC breached its statutory duty to pay petitioner the compensation due him under the employment agreement, (7) CGC, Mr. Heller, Heller Seasonings, and Does 21 through 30 unlawfully retained and converted to their own use petitioner's personal belongings, (8) CGC, Mr. Heller, Heller Seasonings, and Does 31 through 40 invaded petitioner's privacy by inspecting and copying his personal files, (9) the conduct of each defendant was outrageous and pursued to inflict severe emotional distress upon petitioner, (10) CGC, CG Merger, Mr. Heller, Heller Seasonings, and the Heller Trust were alter egos of each other so that each of them lost his or its individuality or separateness as to each other, and (11) Mr. Heller, CGC, and Does 1 through 10 published defamatory statements about petitioner.

With the exception of the first, second, sixth, and seventh causes of action, petitioner did not allege in his first amended complaint that he suffered any specific damages as a result of the asserted conduct underlying a cause of action. The first cause of action alleged that CGC's breach of the employment agreement caused petitioner to lose salary of approximately $676,000, incentive compensation of approximately $1,250,000, supplemental incentive compensation of approximately $500,000, and an unspecified amount of other significant benefits. The second cause of action alleged that the named defendants' interference with the employment agreement caused petitioner to

suffer emotional distress, loss of reputation, and consequential damages of an unspecified amount. The sixth cause of action alleged that CGC's breach of its statutory duty made it liable to petitioner for unpaid wages plus penalties. The seventh cause of action alleged that petitioner was entitled to recover from the named defendants both his personal belongings and damages.

Rule 2.5 of the San Diego Superior Court Local Rule Division II requires that all plaintiffs and cross-complainants in an action in superior court complete and serve a "Case Management Conference Questionnaire" (questionnaire) on all parties 10 days before the date set for case management conference. Among other things, the questionnaire asks each plaintiff and cross-complainant to list the amount of damages which he or she is claiming for personal injuries vis-a-vis nonpersonal injuries. In August 1992, petitioner filed a questionnaire with the superior court. The questionnaire listed no claim for damages for personal injury. The questionnaire listed only petitioner's claim for nonpersonal injuries in the amount of $2.5 million plus general and punitive damages.

Following a jury trial, the jury returned a special verdict finding among other things that: (1) CGC breached its employment agreement with petitioner by terminating him contrary to the terms thereof, (2) the Heller Group and Harris wrongfully induced CGC to breach that agreement, (3) the Heller Group and Harris

wrongfully interfered with petitioner's prospective economic advantage, (4) CGC breached an obligation of good faith and fair dealing owed to petitioner, (5) the Heller Group committed fraud on petitioner, (6) the Heller Group and CGC took petitioner's personal property and converted it to their own use, (7) the Heller Group and CGC invaded petitioner's privacy, (8) CGC and Mr. Heller defamed petitioner, (9) each member of the Heller Group was the alter ego of CGC in connection with the matters contained in the lawsuit, and (10) the conduct of the Heller Group, CGC, and Harris was malicious, oppressive, or fraudulent. On the basis of those findings, the jury found that petitioner was entitled to the following damages:

| | |
|---|---:|
| Loss of past and future compensation and employment benefits | $2,315,000 |
| Emotional distress | 500,000 |
| Conversion of personal property | 10,000 |
| Invasion of privacy | 10,000 |
| Defamation | 1,000,000 |
| Total | 3,835,000 |

The jury made the $2,315,000 finding pursuant to an instruction that directed them to find damages upon making any one of the five findings set forth in 1 to 5 above. The jury made the $500,000 finding pursuant to an instruction that directed them to find damages upon making any one of the three findings set forth in 2,3, and 5 above. The jury's $10,000 finding for conversion of personal property stemmed from its finding in 6 above. The jury's $10,000 finding for invasion of privacy stemmed from its

finding in 7 above.  The jury's $1 million finding stemmed from its finding in 8 above.  The jury made no finding of damages with respect to its findings in 9 and 10 above.

On July 6, 1993, petitioner and Harris filed with the superior court a stipulation in which they agreed that petitioner would receive $665,000 of punitive damages, for a total award of $4.5 million.  Petitioner and Harris agreed in the stipulation that Harris would pay petitioner the $4.5 million to settle all of his claims related to the lawsuit and that CGC and the Heller Group would remain fully liable to Harris for all payments made by Harris.  The stipulation contained numerous provisions designed to protect Harris' right to proceed against CGC and the Heller Group to recover amounts that Harris paid on their behalf.[1]  Harris agreed to fund the settlement by itself on account of its banking relationship with and as an accommodation to CGC and the Heller Group.

Harris paid petitioner $1,125,000 of the settlement proceeds on July 7, 1993, and it paid him the balance approximately 5 months later.  On his 1993 Federal income tax return, petitioner

[1] Among other things, petitioner promised that he would work with Harris in its collection and enforcement efforts against the other defendants.  Petitioner and Harris also agreed that the superior court should retain jurisdiction of their case to enter judgment in Harris' favor as to the other defendants.  The court agreed to retain jurisdiction and set the matter for status on Dec. 15, 1993.  The record does not disclose what, if anything, happened at that status hearing, or if, in fact, the status hearing was ever held.

included in his gross income only the $665,000 of proceeds which he received as an award of punitive damages.  Petitioner excluded from his gross income the rest of the settlement proceeds on the grounds that he had received those amounts as compensation for personal injuries.

Respondent determined that petitioner could exclude from his gross income only the following amounts:

| | |
|---|---|
| Defamation | $1,000,000 |
| Emotional distress | 500,000 |
| Invasion of privacy | 10,000 |
| Total | 1,510,000 |

Respondent determined that petitioner's gross income includes: (1) The $2,315,000 that he received for loss of past and future compensation and employment benefits and (2) the $10,000 that he received for conversion of personal property.

## Discussion

We are faced once again with a determination as to the taxability of proceeds received through the prosecution or settlement of a lawsuit.  Petitioner obviously wants to maximize his recovery by paying the least amount of taxes thereon. Section 104(a)(2) and the regulations thereunder allow him to exclude from his gross income the proceeds of a settlement when two conditions are met.[2]  First, the cause of action giving rise

---

[2] Sec. 104(a)(2) generally provides that gross income does not include "the amount of any damages received (whether by suit or agreement * * *) on account of personal injuries or sickness".

to the proceeds must have been based upon tort or tort type rights. Second, the tort-feasor must have paid the proceeds to petitioner on account of personal injuries or sickness. To the extent that petitioner fails either condition, section 104(a)(2) will not operate to exclude the disputed amounts from his gross income. See sec. 104(a)(2); O'Gilvie v. United States, 519 U.S. 79 (1996); sec. 1.104-1(c), Income Tax Regs.; see also Commissioner v. Schleier, 515 U.S. 323, 333-334 (1995); Banks v. United States, 81 F.3d 874, 876 (9th Cir. 1996); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

Petitioner argues that section 104(a)(2) reaches all of the $2,315,000 awarded to him for loss of past and future compensation and employment benefits. According to petitioner, the underlying causes of action giving rise to his recovery of that amount are tortlike by virtue of the fact that Harris was found liable to him only for causes of action which are torts. Petitioner asserts that the second condition for exclusion under section 104(a)(2) also is met because he suffered damages to his person rather than to a property interest of his. Respondent argues that section 104(a)(2) does not apply to any of the $2,315,000 because none of it was received on account of a personal injury. Respondent asserts that petitioner received the $2,315,000 as compensation for economic damages.

We agree with respondent that none of the $2,315,000 falls within the section 104(a)(2) exclusion.  We apply the two conditions for excludability set forth above.  As to the first condition, we ascertain whether the claims alleged in the lawsuit have tortlike characteristics, placing our focus on the scope of remedies available for those claims.  See United States v. Burke, 504 U.S. 229, 234-236 (1992); Dotson v. United States, 87 F.3d 682, 685 (5th Cir. 1996); Robinson v. Commissioner, 102 T.C. 116, 125-126 (1994), revd. on an issue not relevant herein 70 F.3d 34 (5th Cir. 1995).  As for the second condition, we analyze the damages recovered on the tortlike claims to ascertain whether those damages were recovered for personal injuries.  See O'Gilvie v. United States, supra; see also Dotson v. United States, supra at 685.  Because petitioner recovered damages under the terms of a settlement agreement, we examine that agreement in light of the facts and circumstances surrounding it to ascertain the nature of the claims underlying the recovery.  We ask ourselves: "What is the payor's intent in making the payment?", see Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21, and "In lieu of what were the damages awarded?", see Robinson v. Commissioner, supra at 126-127, and the cases cited thereat.  We bear in mind the

fact that the jury had awarded petitioner damages as part of its special verdict.

Harris paid the $2,315,000 to petitioner as part of a larger package of consideration that settled all of his claims related to his termination from CGC. The jury had found that Harris and the other defendants were liable to petitioner for $2,315,000 by virtue of the fact that each of the defendants was connected to one or more of the first five causes of action set forth above. Petitioner looks solely to the claims that he had made against Harris and concludes that the payment was entirely for those claims. We disagree with this conclusion. We read the settlement agreement to indicate that Harris paid the $2,315,000 to petitioner intending to satisfy all of his claims set forth in the first five causes of action and not merely those claims which he had made against Harris. To be sure, Harris designed the settlement agreement specifically to preserve the claims that it had against the other defendants by virtue of its payment of the $4.5 million and to assure the cooperation of petitioner and the superior court in pursuing and collecting on those claims.

As to the first and fifth causes of action (breach of contract and breach of the implied covenant of good faith and fair dealing), any proceeds which petitioner received for settlement of those claims do not meet the first condition for exclusion under section 104(a)(2); i.e., both claims are contractual in that any damages which could be recovered on them

would be limited to traditional contractual type remedies.  See United States v. Burke, supra at 234 ("A 'tort' has been defined broadly as a 'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" (quoting Keeton et al., Prosser and Keeton on the Law of Torts 2 (5th ed. 1984)); Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir. 1989) (a breach of the implied covenant of good faith and fair dealing under California law is not a tort).  To the extent that Harris' payment of the $2,315,000 was intended to satisfy either the first or fifth cause of action, it will not qualify for exclusion under section 104(a)(2).

As to the other three of the first five causes of action (namely, interference with contract, interference with prospective advantage, and fraud), those claims did involve a tort.  None of them alleges breach of contract, and each of them, in and of itself, would, under California law, allow for the recovery of damages for emotional distress.  Given that a recovery for emotional distress is not a traditional contractual type remedy, we conclude that the second through fourth causes of action satisfy the first condition for exclusion under section 104(a)(2).

We turn to analyze whether petitioner received any of the $2,315,000 as compensation for those three torts so as to satisfy the second condition for exclusion under section 104(a)(2) asking

ourselves whether Harris paid any portion of the $2,315,000 on account of personal injuries or sickness.  We answer those questions "No".  Harris paid petitioner none of that amount "by reason of, or because of, * * * [a tortlike claim for] personal injuries".  O'Gilvie v. United States, 519 U.S. at 83. Petitioner's recovery of that amount arose out of his employment agreement with CGC, and the $2,315,000 that petitioner received as compensation was slightly less than the approximate amount of salary, incentive compensation, and supplemental compensation that petitioner claimed he was entitled to by virtue of CGC's breach of his employment agreement with it.  Moreover, petitioner listed in the questionnaire no claim for damages from a personal injury, classifying the total amount that he was pursuing through the lawsuit as that from a nonpersonal injury, and the jury awarded the $2,315,000 to petitioner as damages for loss of past and future compensation and employment benefits.  Under the facts at hand, we conclude that petitioner received the portion of the $2,315,000 attributable to the torts as "'legal injuries of an economic character'", and, accordingly, that the recovery of that portion was not for personal tortlike injuries.  United States v. Burke, supra at 239 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)); see also Commissioner v. Schleier, 515 U.S. at 331 (economic injuries are not personal injuries for purposes of section 104(a)(2)); Fabry v. Commissioner, 111 T.C. 305 (1998); Robinson v. Commissioner, supra at 126 (section

104(a)(2) does not exclude damages which are "received pursuant to the settlement of economic rights arising out of a contract (e.g., lost profits)"); Gregg v. Commissioner, T.C. Memo. 1999-10; Kightlinger v. Commissioner, T.C. Memo. 1998-357. We hold that section 104(a)(2) does not operate to exclude from petitioner's gross income any of the $2,315,000 at issue.

As to the $10,000 in dispute, petitioner was paid that amount by virtue of the fact that the jury had concluded that his personal property had been converted by CGC and the Heller Group. Petitioner was paid the $10,000 as a compensation for property damage and not on account of a personal injury. We conclude and hold that the $10,000 is not excluded from petitioner's gross income by virtue of section 104(a)(2).

We have considered all of the parties' arguments and, to the extent not discussed above, find them to be without merit. To reflect the foregoing,

Decision will be entered

under Rule 155.