Carl J. FABRY, Patricia P. Fabry, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 99-12407.

United States Court of Appeals,

Eleventh Circuit.

Aug. 21, 2000.

Appeal from a Decision of the United States Tax Court. (No. 96-09126).

Before DUBINA, BLACK and HILL, Circuit Judges.

HILL, Circuit Judge:

This tax case presents a single issue: are damages to business reputation received in the amount of $500,000 by taxpayers in 1992[1] in settlement of their tort action for strict liability and negligence against the manufacturer of an allegedly defective product properly excludable from gross income under Internal Revenue Code (IRC) § 104(a)(2) as "damages received ... on account of personal injuries"? Under a *de novo* review, based upon the following, the answer to this question is yes. The decision of the tax court is reversed.

## I. FACTUAL BACKGROUND

The relevant facts are straightforward and undisputed. From 1976 to 1988, taxpayers Patsy and Carl Fabry were the successful operators of an unincorporated sole proprietorship known as Patsy's Nursery in Orange County, Florida near Orlando. They specialized in raising ornamental plants[2] and citrus trees. During this period of time, the nursery and the Fabry's reputation in the agricultural industry prospered. Their business grew to become that of a large-scale commercial supplier.

Good times and the Fabrys' good name suffered change in 1988 when the Fabrys began to use a

---

[1]Since 1996, this question does not arise. IRC § 104(a)(2) was amended by the Small Business Job Protection Act of 1996. The amendment provides that damages received on account of a non-physical injury (*e.g.,* age discrimination and injury to reputation) are not excludable from gross income. This restriction on the exclusion from income of non-physical damages, however, is generally effective for amounts received after August 20, 1996, but does not apply to amounts received under any written binding agreement, court decree, or mediation award in effect on, or issued on or before, September 13, 1995. P.L. 104-188. The amended section does not apply here.

[2]The ornamental plants were wax plants, *Hoya Carnosa.* Due to the high quality and vivid color of the wax plants, Patsy Fabry became known in the nursery business as the "Hoya Lady." Her success did not go unnoticed. Research papers were written by representatives of the University of Florida's Institute of Food and Agricultural Science on growing processes used by the Fabrys.

chemical fungicide manufactured by E.I. du Pont de Nemours and Co. (du Pont) on their plants.[3] Upon using this fungicide, their plants began to yellow, leaves were distorted, growth was stunted. Many plants died. Over the next three years, the Fabrys suffered extensive damage to their nursery stock, eventually causing them to default on contracts under which they were obligated to deliver healthy plants. Then, when previously sold plants developed defects, alleged to be fungicide-related, the death knell struck. The Fabrys' reputation as respected business persons with expertise in the production and supply of quality plants was gone.[4] They closed the nursery in 1991.

II. PROCEDURAL BACKGROUND

A.     *State Court Action*

The Fabrys sued du Pont in state court seeking monetary damages under tort theories of negligence and strict liability. Their complaint averred that the fungicide they had used in the nursery was contaminated and that the contamination caused damage to their plants. They sought damages for lost profits, lost going concern value and damage to their business reputation.[5]

Settlement discussions commenced almost immediately. Part of the Fabry's initial settlement demand included in part a claim for $500,000 for damages to their business reputation. The lawsuit was resolved through mediation in 1992. Du Pont paid taxpayers $3.8 million in exchange for a full release of the claims asserted in the suit. In their general release, the taxpayers released du Pont from all claims relating to their use of its fungicide in their nursery between 1988 and 1991, except, among other things, for claims for damages to crops planted in the future. Thereafter, the Fabrys filed a notice of voluntary dismissal with prejudice.

B.     *The Federal Court Action*

---

[3]Even the field notes of a du Pont representative admit that the Fabrys had established a premier citrus nursery using state of the art operations.

[4]The record very clearly reflects how the Fabrys' sole proprietorship and their good name were synonymous, inextricably intertwined. The fungicide contamination had a devastating impact on both. When the Fabrys sold a plant or a tree, their name was on it. Long-term customers felt that they could not depend on them anymore and the Fabrys' word was viewed by the closely-knit agricultural community as "no good." They lost friends and withdrew from trade organizations due to the embarrassment they suffered. In 1996, Mr. Fabry underwent open heart surgery.

[5]The Fabrys claimed in their first amended complaint that they had "sustained damages in the form of the lost value of destroyed or injured plants, damage to their business reputation, lost income and lost value for their business...."

On their 1992 joint federal income tax return, the Fabrys did not include in gross income the $500,000 received in settlement of their tort action against du Pont attributable to damage to their business reputation. Their rationale was that, acting in good faith, they had substantial authority and reasonable grounds for their position that the $500,000 was not taxable income under IRC § 104(a)(2). The Commissioner of the Internal Revenue Service (Commissioner) disagreed, asserting against the taxpayers a tax deficiency of $201,054, plus an accuracy penalty of $40,211. The Fabrys petitioned the tax court for a redetermination of both the deficiency and the penalty.

Following trial, the tax court, using a facts and circumstance approach, found in favor of the Commissioner.[6] A final 1992 income tax deficiency against the taxpayers was computed to be $200,192, with a penalty of $7,088. This appeal follows.

## III. STANDARD OF REVIEW

The interpretation and application by the tax court of a statutory section of the Internal Revenue Code is a question of law which we review *de novo*. *Atlanta Athletic Club v. Commissioner,* 980 F.2d 1409, 1412 (11th Cir.1993); *Gold Kist v. Commissioner,* 110 F.3d 769, 771 (11th Cir.1997).

## IV. ANALYSIS

A.    *The Statute-Damages Received for Personal Injuries or Sickness Prior to August 21, 1996*[7]

The definition of gross income under the IRC sweeps broadly. *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 475, 99 L.Ed. 483 (1955). Section 61(a) provides that "gross income means all income from whatever source derived," subject only to the exclusions specifically enumerated elsewhere in the Code. IRC § 61(a). The settlement award in this case constitutes gross income unless it is expressly excepted by another provision. Exclusions from income are narrowly construed. *See United States v. Centennial Sav. Bank FSB,* 499 U.S. 573, 111 S.Ct. 1512, 1519, 113 L.Ed.2d 608 (1991).

For our purposes here, section 104(a)(2) provides that damages received pursuant to a judgment or settlement (whether as lump sums or as periodic payments) on account of personal injuries or sickness were

---

[6]*See also Henry v. Commissioner,* 77 T.C.M. (CCH) 2209 (1999)(where, relying upon its opinion in this case, *Fabry v. Commissioner,* 111 T.C. 305 (1998), the tax court found that the $1,623,203 payment received in 1994 by the taxpayer, a Florida orchid grower, for loss of business reputation and loss of business reputation as an orchid grower, in settlement of his claim for negligence and strict liability in tort against du Pont, after application of its chemical fungicide on his orchids, was not made "on account of personal injuries" within the meaning of IRC § 104(c)(2) and was includable in gross income for income tax purposes).

[7]*See* note 1 *supra.*

excludable from gross income. IRC § 104(a)(2). However, neither the statute nor its legislative history offer any explanation of the term "personal injuries."[8] *See United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). The regulations, however, in defining the term "damages" equate the term "personal injury" to a violation of tort or tort type rights.[9] Regs. § 1.104-1(c).

B.     *Inconsistent Case Law Prior to 1992*[10]

During this period of time, yet prior to the first of three Supreme Court decisions beginning in 1992[11], neither the courts nor the Internal Revenue Service (IRS) appear to have been able to reach a firm consensus as to what constituted a personal injury. Significant to this case, during the 1980's, there was considerable disagreement and controversy as to whether the term "personal injuries or sickness" encompassed injury to reputation, and if it did, whether that included injury to business reputation.[12]

In *Roemer v. Commissioner,* 79 T.C. 398 (1982), *rev'd* 716 F.2d 693 (9th Cir.1983), the taxpayer was

---

[8]Black's Law Dictionary 790 (7th ed.1999) defines personal injury to include both physical and non-physical injury: "*Torts.* 1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise;  bodily injury. 2. Any invasion of a personal right, including mental suffering and false imprisonment."

[9]"The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Regs. § 1.104-1(c).

[10]Given the foregoing state of circumstances at the time of the settlement transaction here under investigation, we seek in vain if we seek for precedential clarity.  Nevertheless, we must embark on the trip to the best conclusion available.  Our voyage is upon dimly lit waters, shrouded in fog, marked, if at all, by barely discernable lights and barely audible bell buoys, some on one side and others on the opposite side of the channel we seek to navigate.  If we succeed in reaching the right destination it will have involved some unavoidable encounters with shoals, sand bars and shell banks, but we hope, the watertight integrity of the vessel will have survived.

[11]*See* Part IV.C *infra.*

[12]*See Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), *aff'd* 848 F.2d 81 (6th Cir.1988) (where the tax court found, as to amounts received by taxpayer in settlement of his malicious prosecution suit, that there was no valid distinction between damages received for injury to personal reputation and damages received for injury to business reputation);  Rev. Rul. 85-98, 1985-2 C.B. 51 (I.R.S.1985) (recoveries for injury to personal reputation are excludable but recoveries for injury to business reputation are not); *Church v. Commissioner,* 80 T.C. 1104 (1983) (where recoveries for injury to personal reputation found excludable in tort action involving libel by elected state attorney general against newspaper;  the fact that he was a public figure compounded the pain); *Roemer v. Commissioner,* 716 F.2d 693 (9th Cir.1983), *rev'g* 79 T.C. 398 (1982) (discussed at Part IV.B. *infra,* where recoveries for injury to business reputation in tort action involving libel by licensed insurance broker against credit bureau for filing false credit report found excludable).

a licensed insurance broker who filed a libel suit against a credit bureau for publishing a false credit report.[13] The tax court found that there was a distinction between an injury to personal reputation and an injury to business reputation. Only the former was excludable under IRC § 104(a)(2). The Ninth Circuit reversed. It looked to the nature of the tort of defamation under California law and concluded that the *Roemer* defamation resulted in a personal injury. The court noted that injury to personal reputation by a defamatory attack should not be confused with its derivatory consequences, *i.e.,* loss of income or loss of standing in the community. As all harm flowed from the same personal attack, all compensatory damages were held excludable, whether personal or professional. *Id.* at 700-01; *see* Rev Rul 85-143, 1985-2 C.B. 55 (I.R.S.1985) (where the IRS stated that it would not follow the Ninth Circuit's opinion in *Roemer* ).

Then, in 1988, case law came full circle when the tax court and the Sixth Circuit appeared to put the issue of distinction between an injury to personal reputation and an injury to business reputation to rest. In *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), *aff'd* 848 F.2d 81 (6th Cir.1988), taxpayer settled a tort action for malicious prosecution, arising out an earlier real estate contract rescission action. The tax court recognized, and the Sixth Circuit agreed, that unreasonable distinctions between an injury to personal reputation and an injury to professional reputation had been made in the past. *Id.* at 83. Following the Ninth Circuit's reasoning in *Roemer,* the Sixth Circuit stated:

> We agree with the Ninth ... Circuit[ ] that the nonpersonal consequences of a personal injury, such as a loss of future income are often the most persuasive means of proving the extent of the injury that was suffered, and that the personal nature of an injury should not be defined by its effect. Injury to a person's hand or arm is a personal injury. This is so even though it may affect a person's professional pursuits.

*Id.* at 84. The Sixth Circuit held that because the injury to the taxpayer's reputation was a personal injury, although it affected his professional pursuits, all income in compensation of the injury was excludable under IRC § 104(a)(2). *Id.*

C.     *The Supreme Court Decisions, Beginning in 1992*

Finally, in three decisions, two of which are pertinent here, the Supreme Court provided some

---

[13]The *Roemer* complaint alleged that the publication was made "with intent to damage his reputation, and to injure him in his business profession and occupation." *Roemer,* 716 F.2d at 695. The jury, instructed to consider both injury to personal reputation and injury to business reputation in reaching a verdict, awarded the taxpayer both compensatory damages and punitive damages. *Id.* Claiming that the damages were inextricably combined, the taxpayer excluded all compensatory damages, personal and professional alike, from his gross income. *Id.*

definitive guidance as to how IRC § 104(a)(2) should be interpreted.[14]  In 1992, the Court would essentially define what constituted a "personal injury" under the statute by examining the concept of tort in *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34(1992).  In *Commissioner v. Schleier,* 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), the Court would set forth a two-prong test for excludability, discussed below:  (1) that the wrong complained of must constitute a personal injury, and, (2) that damages received must have been received on account of such personal injury.

1.      *The Burke Decision*

The *Burke* case involved whether back pay received by the taxpayer in settlement of her sex discrimination claim against the Tennessee Valley Authority (TVA) under Title VII was excludable under IRC § 104(a)(2) as "damages received ... on account of personal injuries." *Burke,* 112 S.Ct. at 1868.  In order to qualify for the exclusion, the Court found that the taxpayer must show that Title VII, the legal basis of her recovery for back pay, redressed a tort-like personal injury, stating further that:

> For example, the victim of a physical injury may be permitted, under the relevant state law, to recover damages not only for lost wages, medical expenses, and diminished future earning capacity on account of the injury, but also for emotional distress and pain and suffering. (citations omitted).  Similarly, the victim of a "dignitary" or non-physical tort such as defamation may recover not only for any actual pecuniary loss (*e.g.,* loss of business or customers), but for "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." (citations omitted).

*Id.* at 1871-72.  The *Burke* Court concluded that nothing in the remedial scheme of Title VII compensated the taxpayer for the traditional harms associated with personal injury, *i.e.,* pain and suffering, emotional distress, harm to reputation or other consequential damages.[15]  *Id.* at 1874.

2.      *The Schleier Decision*

The *Schleier* case involved whether back pay and liquidated damages received by the taxpayer, a terminated sixty-year old airline pilot, in settlement of his age discrimination claim against United Airlines under the Age Discrimination in Employment Act of 1967 (ADEA) was excludable from gross income under IRC § 104(a)(2).  The Court found that under the plain language of IRC § 104(a)(2), the text of its applicable

---

[14]In *O'Gilvie v. United States,* 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996), discussed at note 25 *infra,* the Court found that punitive damages were not excludable under IRC § 104(a)(2).

[15]The *Burke* analysis was remedy-driven.  It examined the remedial scheme of the underlying law or statute to determine whether the injury claimed to have been suffered by the taxpayer was a tort or tort-like injury.  *Burke,* 112 S.Ct. at 1873.  A personal injury was suffered only if the law giving rise to the claim provided redress for pecuniary loss and redress for intangible loss such as pain and suffering, emotional distress, and loss of reputation.  *Id.*

regulation, and its decision in *Burke,* a taxpayer must meet two independent requirements before a recovery may be excluded under IRC § 104(a)(2). *Schleier,* 115 S.Ct. at 2167. "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights; and second, the taxpayer must show that the damages were received on account of personal injuries or sickness."[16] *Id.*

The *Schleier* taxpayer met neither requirement. As to the first prong, the Court concluded that recovery under the ADEA was not "based upon tort or tort type rights." As to the second prong, while the taxpayer's recovery of back wages appeared at first glance to be comparable to an automobile accident victim's recovery of lost wages, it did not satisfy the critical requirement of being "on account of a personal injury or sickness." *Id.* at 2167. Even if the proximate cause of taxpayer's loss of income was his discharge due to advanced age or the celebration of his sixtieth birthday, neither event can fairly be described as a "personal injury" or "sickness." *Id.* And although, the Court said, his unlawful termination may have caused him some pain, suffering and emotional distress such as that suffered by an automobile accident victim, no personal injury had been suffered affecting the amount of back wages recovered. *Id.*

3.      *Case Law after Burke and Schleier*

While these two cases set forth the two requirements we must meet in order to qualify for a IRC § 104(a)(2) exclusion, they stop short of the precise issue before us. *Burke* holds that payment received because of a Title VII violation is not excludable because violation of Title VII does not provide for personal injury losses. *Schleier* holds that the consequences of reaching sixty years of age are not consequences of personal

---

[16]While the *Schleier* Court's articulation of the second prong has not been found to be a model of clarity, it used a hypothetical example to illustrate the usual meaning of the phrase "on account of personal injuries." A taxpayer injured in an automobile accident, the Court stated, suffers medical expenses, lost wages, and pain, suffering and emotional distress that cannot be measured with precision. *Schleier,* 115 S.Ct. at 2163-64. If the taxpayer settles the resulting lawsuit for $30,000, the entire amount would be excludable under IRC § 104(a)(2). The medical expenses and compensation for pain, suffering and emotion distress clearly constitute damages received "on account of personal injuries." *Id.* Recovery for lost wages, the Court stated, is also excludable as being "on account of personal injuries" as long as the wages resulted from the time in which the taxpayer was out of work due to her automobile injuries. *Id.* The critical point this hypothetical illustrates, the Supreme Court concluded, is that each element of the settlement is recoverable not simply because the taxpayer received a tort settlement but because each element of the settlement satisfies the requirement set forth in IRC § 104(a)(2) that the damages were received "on account of personal injuries or sickness." *Id.* This requirement employs a causal analysis—that is, a causal link must exist between the personal injury and the damages received. The *Schleier* majority, however, did not explain exactly what the link was nor how close the link must be for a recovery to qualify for a IRC § 104(a)(2) exclusion.

injury.[17]  We must look elsewhere for guidance.

Although the few courts after *Schleier* that have examined the second prong have failed to shed much light on its interpretation, we find helpful the recent decision by the Sixth Circuit, in *Greer v. United States,* 207 F.3d 322 (6th Cir.2000).  In *Greer,* the taxpayer, an environmental compliance director, was abruptly terminated by his employer, Ashland Oil, under circumstances he claimed were highly suspicious.  A normal severance package for an Ashland Oil employee of taxpayer's caliber and years of service would have totaled $51,000.  Taxpayer received $331, 968.  He claims the extra portion constituted settlement of his potential wrongful discharge claim and was excludable from gross income.  *Id.* at 325.  He asserted that the circumstances of his termination diminished his personal and professional reputation and inflicted stress, humiliation, mental anguish, self doubt and emotional pain upon him.  *Id.* The district court agreed and granted the taxpayer's motion for summary judgment.

Upon the government's appeal, the Sixth Circuit held that *Schleier's* two part test "tightly packs a number of discrete elements." *Id.* at 327, 115 S.Ct. 2159.  It found it useful to disaggregate the test into four disparate elements.  *Id.*  To satisfy *Schleier,* the Sixth Circuit found that:

> ... the taxpayer must show that (1) there was an underlying claim sounding in tort;  (2) the claim existed at the time of settlement;  *(3) the claim encompassed personal injuries;*  and (4) the agreement was executed "in lieu" of the prosecution of the tort claim and "on account of" the personal injury, rendering it a settlement rather than a mere severance agreement.  By requiring each of these elements, courts can effectively distinguish between severance and settlement agreements and prevent parties from "creating contrived 'settlement agreements' to avoid taxation of [severance] proceeds." (citation omitted).

*Id.* (emphasis added).

Turning to the third disparate element, which is also applicable here, the Sixth Circuit stated:

> Third, we find that Greer's tort claim potentially involved injuries that were personal.  Courts and the IRS have long recognized that § 104(a)(2)'s reference to personal injuries "encompasses ... nonphysical injuries to the individual, such as those affecting emotions, reputation, or character.... " *Burke,* 504 U.S. at 235 n. 6, 112 S.Ct. 1867, 119 L.Ed.2d 34.  *See also Schleier,* 515 U.S. at 329 & n. 4, 115 S.Ct. 2159, 132 L.Ed.2d 294 (stating that § 104(a)(2) covers "intangible as well as tangible harms").  Specifically, personal injuries include emotional distress, *see Burke,* 504 U.S. at 235 n. 6, 112 S.Ct. 1867, 119 L.Ed.2d 34, mental pain and suffering, *see Bent v. Commissioner,* 835 F.2d 67, 70 (3d Cir.1987), and injury to personal and professional reputation.  *See Threlkeld v. Commissioner,* 848 F.2d 81, 83-84 (6th Cir.1988);  *Church v. Commissioner,* 80 T.C. 1104, 1109 (1983).  *Here, Greer's tort claim sufficiently encompasses personal injury.  Specifically Greer claims injuries to his personal and professional reputation, as well as distress, humiliation, and mental anguish.  These claims of non-physical injury fall within the broad ambit of § 104(a)(2) "personal"*

---

[17]As discussed in detail in note 16 *supra,* the *Schleier* Court used a hypothetical automobile wreck with bodily injury to illustrate personal injury.  It is beyond dispute that bodily injury is included in personal injury.  The *Schleier* Court was not required to deal with damaged reputation;  it dealt only with birthdays and ADEA recoveries.

*injuries.*

*Id.* at 328, 115 S.Ct. 2159 (emphasis added).[18]

We agree with the Sixth Circuit in *Greer* that after *Schleier,* claims of non-physical injury can still be proven to be excludable.

Furthermore, in *Noel v. Commissioner,* 73 T.C.M. (CCH) 2178 (1997), the Tax Court held that two-thirds of the settlement proceeds were allocated to the release of taxpayer's claims in contract. The remaining one-third was allocated to tortious interference with contractual rights and prospective business advantages. As the interference caused emotional distress and damage to business reputation through adverse publicity in the press, it was paid "on account of personal injury" and excludable from gross income under IRC § 104(a)(2). *See also Knevelbaard v. Commissioner,* 74 T.C.M. (CCH) 161, 168 (1997) (where settlement proceeds paid to dairy farmers by various bank defendants, caused by the banks' violation of duties owed, were held to be excludable as they were made "not for the value of milk, but for the value ... of the emotional distress claims asserted"); *Banks v. United States,* 81 F.3d 874 (9th Cir.1996) (as claim for breach of duty of fair representation was "tort-like" due to available remedies and received from union "on account of personal injury," recovery was excludable); *but see Gregg v. Commissioner,* 77 T.C.M. (CCH) 1215 (1999)(distinguishing *Noel,* where the court found that the taxpayer failed to prove that damages awarded on his claim for interference with a business relationship was received on account of personal injuries).[19]

D.      *The Present Case*[20]

1.      *The Tax Court Opinion*

The IRS stipulated at trial that the $500,000 payment was properly allocable as damage to the Fabry's

---

[18]With this said, nonetheless, the Sixth Circuit found that summary judgment was an inappropriate vehicle as there remained a dispute as to whether the agreement was "on account of" personal injury and remanded to the district court for this factual determination. *Greer,* 207 F.3d at 328.

[19]The appeal of this case is currently pending in our court.

[20]Taxpayer's counsel asserts throughout his brief that an unbroken line of cases hold as a matter of law, that damage to business reputation is a personal injury. Thus counselled, we approached our task as any easy one; we should just follow this unbroken line of cases. We have been disappointed twofold: We do not find an unbroken line, as this was a mischaracterization, and we were not as sincerely counselled as we should have been by an officer of the court.

business reputation.[21] The tax court acknowledged during trial that the case presented a single question of law. Yet, in its opinion disallowing the exclusion under IRC § 104(a)(2), the tax court used a facts and circumstance approach, focusing only on the nature of the Fabrys' claims against du Pont.

The tax court first examined the terms of the Fabrys' release with du Pont and its supporting documents. It found specific language lacking to allow it to conclude that the $500,000 payment was received "on account of" personal injuries.

Next the tax court turned to language found in the Fabrys' first amended complaint for damages and demand for jury trial. Again, it found specific language lacking, as nowhere in the complaint did the Fabrys use the term "personal injuries" to describe the injuries suffered as the result of their use of the du Pont fungicide.

Finally the tax court examined the mediation process preceding settlement, as well as the settlement negotiations themselves and their supporting documents (statements, expert reports, and counsel correspondence).[22] Again it found that no claim for personal injury had been settled by the Fabrys with du Pont.

Based upon this examination of the record, the tax court found that there was insufficient evidence of a claim for personal injury presented during the lawsuit sufficient to support a conclusion that the Fabrys' $500,000 claim for damages to business reputation was "on account of personal injuries." It then disallowed the exclusion under IRC § 104(a)(2).

We disagree. The facts and circumstance approach used by the tax court is insufficient.[23] Its method

[21]At trial, the IRS stipulated that: (1) du Pont was aware from the beginning that the Fabrys' claim included a claim for damage to their business reputation; (2) that throughout settlement discussions the Fabrys had steadfastly presented a $500,000 claim for damage to their business reputation; (3) that du Pont never disputed the Fabrys' claim for business reputation damage throughout the mediation; (4) that du Pont sought and obtained a release specifically with respect to the business reputation claim; and (5) that du Pont would not have settled the case without a release of the claim for damage to the Fabrys' business reputation.

[22]The tax court admits two instances where the Fabrys did assert personal injury in those exact words. The first was in a letter to a private claims adjuster hired by du Pont before commencement of the lawsuit, in which the Fabrys described their loss of friends who were also customers and their belief that they appeared as "lying, deceiving fools to our customers." The second was in a mediation summary letter by the Fabrys' attorney which asserted that the personal injury exception to the stipulation of the parties applied only to physical personal injury. Neither impressed the tax court, however, as the first predated the filing of the complaint and the second postdated the execution of the release.

[23]While we agree that the terms of the settlement agreement (and supporting documentation) is a factor to be considered, *see Stocks v. Commissioner,* 98 T.C. 1, 10 (1992), it is only one factor. Intent of

of merely perusing the record, looking for the presence of the magic words, "personal injury," either in the complaint, the release, mediation correspondence or settlement documents is incorrect.[24]

2.     *Intangible Injuries Such as Damage to Business Reputation in Light of Schleier and Cases Following Schleier*[25]

Based upon the previous discussion, therefore, in order to satisfy *Schleier* and qualify for the exclusion, it appears that a cause and effect relationship must be established between the tort, the personal injury resulting, and the amount received in settlement. In a non-physical personal injury case therefore, each element of the tort settlement must be examined to determine whether there is a direct causal link between such element and an intangible element of the injury (*i.e.,* emotional distress, pain and suffering, loss of reputation, etc.). If such a link is found, it would seem to satisfy *Schleier* and payments received for such damage, including losses of earning capacity and the like, would be excludable.

Is damage to one's business reputation a personal injury? Did the negligent or wrongful conduct of du Pont amount to a tort resulting in personal injury to the Fabrys, culminating in an injury to their business reputation, which injury in turn caused them to suffer damages, personal to them? Did the injury justify the $500,000 amount of damages recovered?[26] For the following reasons, we conclude that it did.

---

the payor is also a factor to be considered. *See Metzger v. Commissioner,* 88 T.C. 834, 847-48 (1987), *aff'd without published opinion,* 845 F.2d 1013 (3d Cir.1988); *Knuckles v. Commissioner,* 349 F.2d 610 (10th Cir.1965). Mere lip service is given to *Schleier.* Recent cases by the tax court also appear to reflect a pattern of this formalistic approach. *See Henry,* 77 T.C.M. (CCH) at 2209; *Bland v. Commissioner,* 79 T.C.M. (CCH) 1713 (2000); *Sherman v. Commissioner,* 77 T.C.M. (CCH) 2199 (1999).

[24]Damage to business reputation may be an assertion of personal injury without saying so; an action for broken bones, contusions, concussions and the like says "personal injury" without those words. The tax court's search for a convenient shibboleth is misdirected.

[25]As the parties have stipulated that the first prong, articulated in *Burke,* is met in the present case, we need analyze only the second. One year after *Schleier,* in the context of punitive damages, the Supreme Court revisited the meaning of "on account of" in *O'Gilvie v. United States,* 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996). The Court observed that the phrase "on account of" did not unambiguously define itself. *Id.* at 454. The Court rejected the taxpayer's contention that it required merely a "but-for" connection between "any" damages and a personal injury lawsuit. *Id.* The Court accepted the government's interpretation under which only those damages were excludable that were awarded "by reason of" or "because of" the personal injuries. *Id.* at 457-58. *O'Gilvie* is consistent with *Schleier* because punitive damages do not bear the direct causal link with the victim's personal injury since the amount of punitive damages awarded generally varies positively with the degree of the tortfeasor's conduct, not with the extent of the injury sustained. *See* note 14 *supra.*

[26]The reasonableness of the value placed upon damage to business reputation, $500,000, is not in dispute. Throughout the claims procedure, litigation and mediation, the $500,000 amount remained constant, even when initial settlement demands by the taxpayers exceeded $9 million, dropped to $7 million, and finally settled at a total of $3.8 million.

3.      *The Unique Facts of this Appeal*

The destruction of Patsy's Nursery business, allegedly resulting from the Fabrys' use of the du Pont fungicide on their plants, was a great loss. In this respect, the physical assets of the sole proprietorship were calculated and a specific sum of money paid by the tortfeasor. Here, du Pont paid $3.3 million to replace the Fabrys' business *qua* business. But, when the lost value of the business had been restored, something intangible remained.[27] Each individual taxpayer walked away from the business stigmatized by allegedly sharp, even fraudulent, dealings. As business persons they had sold defective merchandise that was said to have cheated the buyer. Their reputation as respected merchants and honorable people had been cut away. Even their health appears to have been affected.

The record indicates that both parties to the tort settlement undertook to evaluate the claims for damage to the business itself, then to evaluate the claims for damage done to the taxpayers as sole proprietors of the business. *See Roemer,* 716 F.2d at 697. Here the tort directly disparaged the Fabrys in their business capacity, yet in this instance, the nursery business was the manifestation of the Fabrys, part and parcel of their persona. *See Greer,* 207 F.3d at 328. Their business reputation was their personal reputation.[28] *Id.* Aligning ourselves with the reasoning by the Sixth Circuit in *Greer,* the distress, humiliation and mental anguish suffered by the Fabrys through the loss of their good name were personal injuries within the "broad ambit" of IRC § 104(a)(2). *Id.*

Due to the unique facts of this case, therefore, the taxpayers have proved that the $500,000 in damages awarded on their claim for business reputation was received "on account of personal injuries" sufficient to satisfy the second prong of *Schleier* and are excludable from gross income under applicable IRC § 104(a)(2).

## V. CONCLUSION

The decision of the tax court is REVERSED.

BLACK, Circuit Judge, specially concurring:

---

[27]One would suppose that these parties could have evaluated and settled the claims arising out of claimed destruction of the nursery business, reserving in the Fabrys the right to sue for the damage done to them as people whose reputation as honest persons had been eroded. Would such a reserved claim not be a claim for personal injury? We think it would.

[28]In reverse analogy to the line of tax cases referred to as "piercing the corporate veil" cases, involving a sole corporate shareholder of a one-person corporation, here the Fabrys "were" their unincorporated sole proprietorship business.

I concur in the result.